# United States Court of Appeals for the Federal Circuit

2008-7150

ANGEL VAZQUEZ-FLORES,

Claimant-Appellee,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellant.

--------------------------------------------------------------------------------

2008-7115

MICHAEL R. SCHULTZ,

Claimant-Appellee,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellant.

Richard R. James, Law Offices of Richard Robert James, Esq., of Glen Allen, Virginia, argued for claimant-appellee Angel Vazquez-Flores.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellee Michael R. Schultz.

Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellant. With him on the brief were Michael F. Hertz, Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Martie S. Adelman, Staff Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Bruce E. Kasold (2008-7150)
Judge Mary J. Schoelen (2008-7115)

# United States Court of Appeals for the Federal Circuit

2008-7150

ANGEL VAZQUEZ-FLORES,

Claimant-Appellee,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellant.

Appeal from the United States Court of Appeals for Veterans Claims in 05-0355, Judge Bruce E. Kasold.

--------------------------------------------------------------------------

2008-7115

MICHAEL R. SCHULTZ,

Claimant-Appellee,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellant.

Appeal from the United States Court of Appeals for Veterans Claims in 03-1235, Judge Mary J. Schoelen.

_____

DECIDED:  September 4, 2009

_____

Before LINN, PROST, and MOORE, Circuit Judges.

PROST, Circuit Judge.

The Secretary of Veterans Affairs appeals two related judgments from the Court of Appeals for Veterans Claims ("Veterans Court"). Because the parties make substantially identical arguments, we address the appeals together. Veterans Angel Vazquez-Flores and Michael R. Schultz each applied for an increased rating for their service-connected disabilities. Their regional offices ("ROs") denied the claims, and the Board of Veterans' Appeals ("Board") affirmed in both cases. On appeal to the Veterans Court, the veterans argued that the Department of Veterans Affairs ("VA") provided inadequate notice for an increased rating claim. The Veterans Court agreed, remanding the claims back to the Board. See Vazquez-Flores v. Peake, 22 Vet. App. 37, 50 (2008); Schultz v. Peake, No. 03-1235, 2008 WL 2129773, at *5 (Vet. App. Mar. 7, 2008). The Secretary immediately appealed to us, arguing that under Williams v. Principi, 275 F.3d 1361 (Fed. Cir. 2002), we need not await a final judgment and that the Veterans Court erred in requiring specific notice under the Veterans Claims Assistance Act ("VCAA") of 2000, Pub. L. No. 106-475, § 3(a), 114 Stat. 2096, 2096–97. We agree, and vacate and remand in both cases.

## BACKGROUND

### I. Vazquez-Flores

Veteran Angel Vazquez-Flores served on active duty in the U.S. Army from July 1963 to July 1965 and again from January 1966 to January 1969. After his release from service, he received service connection for nephrolithiasis. Since April 1976, Vazquez-Flores's condition has been rated at 30%—the maximum disability rating possible under diagnostic code ("DC") 7508, the diagnostic code for nephrolithiasis. See 38 C.F.R. § 4.115b.

Although 30% is the maximum disability rating under DC 7508, that diagnostic code cross-references other diagnostic codes that permit even higher disability ratings. Specifically, in most circumstances DC 7508 requires nephrolithiasis to be rated as "hydronephrosis" under DC 7509. See 38 C.F.R. § 4.115b. Both of these ratings provide a maximum 30% disability rating. Under DC 7509, however, severe hydronephrosis can be rated as "renal dysfunction" pursuant to 38 C.F.R. § 4.115a. According to that section of the Code of Federal Regulations, renal dysfunction resulting from hypertension that is at least 40% disabling under DC 7101 increases a disability rating to 60%.

In 1994, Vazquez-Flores requested an increased rating. Following the request, the case shuttled back and forth between the Board and the RO a number of times. The RO issued a number of supplemental statements of the case ("SSOCs"), which summarized any newly submitted evidence and provided the reasons and bases for the RO's decision to deny an increased rating; some of the SSOCs referenced the diagnostic codes for nephrolithiasis, hydronephrosis, and renal dysfunction (but not hypertension).

After the RO again denied an increased rating for Vazquez-Flores's nephrolithiasis, he requested Board review. The Board denied an increased disability rating after evaluating the medical evidence in light of the diagnostic codes for nephrolithiasis, hydronephrosis, renal dysfunction, and hypertension. The Board also found that the VA had satisfied its duty to notify and to assist. See In re Vazquez-Flores, No. 96-37 108A, 2005 WL 3893240 (Bd. Vet. App. Feb. 1, 2005). Vazquez-Flores appealed to the Veterans Court, claiming that the notice did not explain the

criteria for a nephrolithiasis disability rating greater than 30% and failed to inform him that the condition might be rated under a different diagnostic code. Vazquez-Flores, 22 Vet. App. at 41. He also argued that the notice was unclear, since he did not know how to show his condition had "gotten worse." Id. Finally, he claimed he was entitled to notice as to how to request an extraschedular rating.[1] Id.

The Veterans Court held, in relevant part, that under 38 U.S.C. § 5103(a)[2] the VA's notice must satisfy the following requirements: (1) the VA must notify the veteran that in order to substantiate his claim, he must provide (or ask the VA to obtain) medical or lay evidence demonstrating that his disability has worsened or increased in severity and the effect the worsening has had on his employment and daily life; (2) if the veteran's current diagnostic code "contains criteria necessary for entitlement to a higher disability rating that would not be satisfied" by providing the evidence described above— the example provided by the Veterans Court was where a "specific measurement or test result" would be required—then the VA must give "at least general notice" of that requirement; (3) the VA must tell the veteran that if he is assigned a higher rating, that rating will be determined by applying relevant diagnostic codes, which generally provide

---

[1]     Under 38 C.F.R. § 3.321(a), the Schedule for Rating Disabilities must be used to evaluate the degree of a veteran's disability based on the "average impairment in earning capacity in civil occupations resulting from disability." In exceptional cases, "extraschedular" ratings are available where "the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1).

[2]     Congress amended 38 U.S.C. § 5103(a) as part of the Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, § 101, 122 Stat. 4145, 4147–48 (2008), by designating what had been the full text of § 5103(a) as § 5103(a)(1) and adding new subsection (a)(2). Unless otherwise noted, all references to this section of the code are to 38 U.S.C. § 5103(a) (2006).

for disability ratings between 0–100%, "based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment <u>and daily life</u>"; and (4) the notice must also provide examples of the types of medical and lay evidence—such as job application rejections—that the veteran may submit (or ask the VA to obtain) "that are relevant to establishing his entitlement to increased compensation." <u>Vazquez-Flores</u>, 22 Vet. App. at 43–44 (citations omitted and emphasis added).

After comparing these requirements to the notice Vazquez-Flores received, the Veterans Court concluded that the VA did not satisfy its duty to notify. The Veterans Court examined two writings relied upon by the Board: an April 2001 notice letter ("the 2001 letter"), and a December 2003 letter from the VA's Appeal Management Center ("the AMC letter"). The Veterans Court found that the 2001 letter did not tell Vazquez-Flores how to substantiate his claim for an increased disability rating—instead, the letter focused on how to substantiate a claim for service connection. <u>Id.</u> at 48. According to the Veterans Court, the AMC letter was likewise deficient because it merely asked Vazquez-Flores to provide evidence that his nephrolithiasis had "gotten worse." Specifically, the court concluded that the AMC letter failed

> to explain that the evidence must demonstrate the effect of that worsening on his occupational and daily life or to provide, at least in general terms, the criteria beyond the effect of the worsening of the disability upon the occupational and daily life that is necessary to be awarded the higher disability rating for his condition. Moreover, the totality of information provided in these documents was also confusing in that it provided differing versions of what was required to show entitlement to a higher disability rating.

<u>Id.</u> (citations omitted). The Veterans Court concluded that the Board's finding that the VA provided adequate notice was clearly erroneous in light of "the lack of adequate

information in the notice and the otherwise confusing nature of the notice." Id. The Veterans Court then remanded the case based on its conclusion that any notice error was presumptively prejudicial under our then-in-effect decision in Sanders v. Nicholson, 487 F.3d 881, 891 (Fed. Cir. 2007), rev'd sub nom. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

The government filed a motion to stay the precedential effect of the decision, but the Veterans Court denied the request. Vazquez-Flores v. Peake, 22 Vet. App. 91 (2008) ("Order Denying Stay"). The government then filed a motion for either panel reconsideration or en banc review, but that request was also denied. Vazquez-Flores v. Peake, 22 Vet. App. 120 (2008) ("Order Denying Reconsideration"). The government now appeals to this court.

## II. Schultz

Veteran Michael Schultz served in the military during the 1980s and 1990s.[3] He currently has a 20% disability rating for a right shoulder disability (rated by analogy to DC 5202, see 38 C.F.R. § 4.71a) and a 10% disability rating for right and left knee disabilities (rated under DC 5257). See Schultz, 2008 WL 2129773, at *1. In November 1997, he requested higher disability ratings for his injuries. The RO denied the claims in March of 1998, and Schultz appealed. The Board decided to remand his case for readjudication in light of the VCAA.

---

[3] The Board's opinion states that Schultz was on active duty from December 1980 to December 1984 and again from June 1985 to November 1993; the Veterans Court opinion states that he had active military service from July 1985 to November 1993.

In April of 2001, the RO sent Schultz a notice letter, which explained that to receive an increased rating Schultz would have to show that his conditions had "become worse or more disabling." The letter also informed him that he might receive a new VA examination and that he could "submit [his] own statements or statements from other people describing [his] physical or mental disability symptoms." Schultz received additional medical examinations and submitted a letter showing how his disabilities "affected his daily life and employment, and describing the pain caused by his disabilities." Schultz, 2008 WL 2129773, at *1.

After Schultz's case was submitted back to the Board, the Board determined that Schultz was not entitled to an increased rating for his service-connected injuries. In re Schultz, No. 98-14 324, 2003 WL 23598119 (Bd. Vet. App. Mar. 21, 2003). The Board also concluded that the April 2001 letter satisfied the VA's duty to notify. Id. Schultz appealed, arguing in relevant part that the VA failed to provide adequate notice of the evidence necessary to substantiate his claims for increased ratings. See Schultz, 2008 WL 2129773, at *2.

The Veterans Court relied on Vazquez-Flores in finding that the April 2001 notice was inadequate. The court reached that conclusion because the notice did not "inform the appellant that he should submit evidence describing the effects of his worsened condition on his employability and daily life." Id. at *5. In addition, the Board had indicated that Schultz's knee disabilities could be evaluated based on diagnostic codes relating to "limitation of motion, dislocated or removed cartilage, nonunion and/or malunion of the tibia and fibula, or the presence of genu recurvatum." Id. Since each of these methods for evaluating Schultz's knees depended upon different evidence—"not

simply a showing that the overall condition has worsened," as stated in the April 2001 letter—the court found that the notice did not comply with the requirements of § 5103(a) as interpreted by Vazquez-Flores. Id. In fact, Schultz arguably broadens the holding in Vazquez-Flores because diagnostic code 5257—Schultz's initial rating—does not reference any other diagnostic code, yet the court nonetheless required the VA to include notice relating to a number of alternative methods for evaluating Schultz's disability. See 38 C.F.R. § 4.71a.

## DISCUSSION

Under 38 U.S.C. § 7292, this court has limited authority to review the Veterans Court's decisions. This court decides de novo "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1); Buchanan v. Nicholson, 451 F.3d 1331, 1334 (Fed. Cir. 2006). However, unless the appeal presents a constitutional issue, we may not review "a challenge to a factual determination, or . . . a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

The Veterans Court remanded both Vazquez-Flores and Schultz to the Board. In Williams, we noted that we typically do not review remand orders because they are not final judgments. 275 F.3d at 1364. We will, however, "depart from the strict rule of finality" in certain circumstances. Id. In particular, where "there [is] a clear and final decision of a legal issue that (a) is separate from the remand proceedings, (b) will directly govern the remand proceedings, or (c) if reversed by this court, would render the remand proceedings unnecessary"; where "the resolution of the legal issues . . . adversely affect[s] the party seeking review"; and where a substantial risk

exists "that the decision would not survive a remand, i.e., that the remand proceeding may moot the issue," we will review the issue brought before us despite a lack of finality. Id. (footnotes omitted).

On appeal, the government presents two questions: whether the Veterans Court erred in holding that 38 U.S.C. § 5103(a) requires the VA to provide a veteran seeking an increased rating with the relevant rating criteria under every diagnostic code potentially applicable to the veteran's present disability; and whether the Veterans Court erred in requiring the VA to consider the effect of the worsening of a service-connected disability upon the veteran's daily life, instead of focusing solely on the veteran's diminished earning capacity. Under Williams, the legal issues presented by the appeal adversely affect the party seeking review, the resolution of these questions in the government's favor would directly govern the remand proceedings, and a substantial risk exists that the remand proceeding would moot both issues. Thus, we may exercise jurisdiction over the appeal, and will address each of these questions in turn.

## I. Diagnostic Codes

As the Veterans Court stated, its Vazquez-Flores holding requires

> a review of the previously assigned DC and disability rating, and a common-sense assessment whether the criteria for a higher rating under the assigned or a cross-referenced DC includes criteria "that would not be satisfied by the claimant demonstrating a noticeable worsening or increase in severity of the disability and the effect of that worsening . . . on the claimant's employment and daily life (such as a specific measurement or test result)." See Vazquez-Flores, 22 Vet. App. at 43-44. If it does, then general notice of that criteria must be provided to the claimant.

Order Denying Stay, 22 Vet. App. at 93. By requiring the VA to give "general notice" of potential alternative diagnostic codes, the government maintains that the Veterans Court is in essence requiring a "predecisional adjudication"—the VA would have to

evaluate the particulars of each veteran's case in order to make a "common-sense assessment" as to whether such additional notice is needed, and notify each veteran of the information and evidence necessary to satisfy the requirements for an increased rating for his particular disease or injury. The government claims that such a result would be inconsistent with our decisions in Paralyzed Veterans of America v. Secretary of Veterans Affairs, 345 F.3d 1334 (Fed. Cir. 2003), and Wilson v. Mansfield, 506 F.3d 1055 (Fed. Cir. 2007).

The veterans attempt to distinguish those cases by arguing that they are limited to their particular facts—under the veterans' interpretation, Wilson stands for the proposition that § 5103(a) is satisfied by generic notice only in an initial claim for compensation, and Paralyzed Veterans merely states that 38 C.F.R. § 3.159(b)(1) is consistent with the statute. Vazquez-Flores also appears to seek refuge in Wilson's recognition that the content of a notice "must depend on the kind of claim," apparently interpreting the "kind of claim" as one relating to a veteran's particular injury.

In Paralyzed Veterans, we addressed a general challenge to the regulations promulgated by the VA following the enactment of the VCAA. In particular, we analyzed 38 C.F.R. § 3.159(b)(1), which closely tracks 38 U.S.C. § 5103(a). The regulation stated, in relevant part:

> When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim. VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the claimant. VA will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim.

38 C.F.R. § 3.159(b)(1) (2002). The petitioners argued that the regulation was not in

accord with the statute because the regulation did not "require VA to identify with specificity the evidence necessary to substantiate the claim." Paralyzed Veterans, 345 F.3d at 1347. They also claimed that the regulation imposed "an unreasonable and unnecessary expectation upon the claimant to know which materials in his or her possession constitute 'evidence' that may 'pertain[] to the claim.'" Id. (alteration in original). We rejected those arguments, stating that "§ 3.159(b)(1) sets out with reasonable clarity and specificity the notice VA is required to provide a claimant and is entirely consistent with the statutory requirement of § 5103(a). . . . [I]ts requirements are both reasonable and sufficient." Id. at 1347–48 (emphasis added).

In Wilson, we addressed a veteran-specific challenge to 38 U.S.C. § 5103(a). Building on Paralyzed Veterans, we held that the requirements of § 5103(a) (and therefore 38 C.F.R. § 3.159(b)(1), since the regulation "tracks the statutory text and imposes no additional notice obligation") were satisfied by "generic" notice. Wilson, 506 F.3d at 1058–60. Although Wilson's particular challenge was in the context of a claim for service connection, we discussed the requirements of § 5103(a) as a whole, noting that although "[t]he statute on its face does not address the level of required detail," the legislative history made it clear that "Congress intended this language to provide an 'objective test for the types of evidence that could be useful . . . in deciding the claim.'" Id. at 1059 (quoting 146 Cong. Rec. H9912, 9914 (daily ed. Oct. 17, 2001)) (emphasis omitted). Thus, while "the notice must identify the information and evidence necessary to substantiate the particular type of claim being asserted by the veteran (which we refer to here as 'generic notice'), . . . there is no indication that Congress intended to require an analysis of the individual claim in each case." Id. We expressed confidence that we

would have reached the same conclusion upon a de novo review, but that conclusion was bolstered by the fact that we owed deference to the VA's reasonable interpretation of the statute. Id. at 1060; see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–44 (1984).

Both Wilson and Paralyzed Veterans speak to the question at hand. In Wilson, the "particular type of claim" was a claim for service connection, and the discussion surrounding the "particular type of claim" language made it clear that that phrase was intended to distinguish between types of claims, i.e., between claims seeking service connection and those seeking increased ratings. The "particular type of claim" contemplated in Wilson was not, as the veterans would have it, a "veteran-specific" claim, or one that would depend upon the particulars of a given veteran's case. In other words, Wilson and Paralyzed Veterans put to rest the notion that the VA is required to provide veteran-specific notice, although Wilson requires the notice to be claim-specific. As a result, generic notice provided in response to a request for service connection must differ from that provided in response to a request for an increased rating. See Wilson, 506 F.3d at 1059.

The Veterans Court appeared to embrace Wilson and Paralyzed Veterans—in fact, the court cited both cases in its Vazquez-Flores opinion, and discussed the excerpts of Wilson highlighted above. 22 Vet. App. at 41–44. Nonetheless, the Veterans Court went on to make it clear that the "general notice" requirement it described in Vazquez-Flores would not be satisfied by an all-purpose statement to the effect that if the veteran's current diagnostic code cross-references other codes, the veteran's disability rating might also be increased based on the criteria described in

those other codes. Order Denying Stay, 22 Vet. App. at 93, 95; Schultz, 2008 WL 2129773, at *5–6. Instead, the Veterans Court envisions a notice that addresses each veteran's particular facts—i.e., a review of the individual veteran's initial diagnostic code, disability rating, and any cross-referenced diagnostic code as well as "a common-sense assessment whether the criteria for a higher rating under the assigned or a cross-referenced DC includes criteria 'that would not be satisfied by the claimant demonstrating a noticeable worsening or increase in severity of the disability.'" Order Denying Stay, 22 Vet. App. at 93 (quoting Vazquez-Flores, 22 Vet. App. at 43–44). As a result, the notice provided to Vazquez-Flores would be different than that provided to Schultz, despite the fact that both filed a request for an increased rating. Whether this type of notice can be considered a "predecisional adjudication" is beside the point; veteran-specific notice cannot be considered "generic notice," and generic notice in response to the "particular type of claim"—a claim for an increased rating—is all that is required under our reasoning in Paralyzed Veterans and Wilson. See Wilson, 506 F.3d at 1059–60; Paralyzed Veterans, 345 F.3d at 1338; see also Order Denying Stay, 22 Vet. App. at 92 ("The underlying Vazquez-Flores decision defined the scope of the notice required by section 5103(a) when the claim is one for increased disability compensation.").

The veterans next direct our attention to a Senate Report accompanying the Veterans' Benefit Improvement Act of 2008 ("VBIA") in support of their argument to the contrary. While the veterans acknowledge that the VBIA was enacted well after the notices at issue, they nonetheless argue that Congress's reasoning ought to inform the

outcome in this case. As noted, the Act added a subsection to 38 U.S.C. § 5103; under the statute, the Secretary must promulgate regulations that

> (i) shall specify different contents for notice based on whether the claim concerned is an original claim, a claim for reopening a prior decision on a claim, or a claim for an increase in benefits;
> (ii) shall provide that the contents for such notice be appropriate to the type of benefits or services sought under the claim;
> (iii) shall specify for each type of claim for benefits the general information and evidence required to substantiate the basic elements of such type of claim; and
> (iv) shall specify the time period limitations required pursuant to subsection (b).

38 U.S.C.A. § 5103(a)(2)(B) (2008). The Senate Report indicates that the amendment was intended to bring the statute into compliance with the notice requirements outlined in Vazquez-Flores. S. Rep. No. 110-449, at 11–12 (2008), reprinted in 2008 U.S.C.C.A.N. 1722, 1728–34. As Vazquez-Flores himself recognizes, however, the report "does not govern the issues" here. Huffman v. Office of Pers. Mgmt., 263 F.3d 1341, 1354 (Fed. Cir. 2001) ("The Supreme Court has specifically held that statements made in the context of a later amendment to a statute that does not amend the portion of the statute at issue in the case, 'are in no sense part of the legislative history.'") (quoting Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758 (1979)); see also Thompson v. Cherokee Nation, 334 F.3d 1075, 1092 & n.18 (Fed. Cir. 2003). The VA has yet to promulgate regulations relating to 38 U.S.C. § 5103(a)(2), and we will address challenges to the notice provided under the amended statute as appropriate in the future.

## II. Daily Life

In addition to requiring the VA to provide notice of alternative diagnostic code criteria, the Veterans Court would require the VA to inform the veteran that he or she

may submit evidence of the effect his disability has on his "daily life":

> [T]he Secretary [must] notify the claimant that, to substantiate a claim, the claimant must provide, or ask the Secretary to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment and daily life. . . . Additionally, the claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant DCs, which typically provide for a range in severity of a particular disability from 0% to as much as 100% (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment and daily life.

Vazquez-Flores, 22 Vet. App. at 43 (emphases added); see Schultz, 2008 WL 2129773, at *5 (notice letter inadequate in part because it "failed to inform the appellant that he should submit evidence describing the effects of his worsened condition on his employability and daily life" (emphasis added)).

The government challenges this requirement on two grounds. First, the government argues that this interpretation is inconsistent with the statute, which obliges the Secretary to "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations." 38 U.S.C. § 1155. The VA has incorporated this language into some of its regulations as well. For instance, 38 C.F.R. § 3.321(a) states that "[t]he provisions contained in the rating schedule will represent as far as can practicably be determined, the average impairment in earning capacity in civil occupations resulting from disability," while 38 C.F.R. § 4.15 notes that a veteran's rating "is based primarily upon the average impairment in earning capacity." Second, the government argues that under 38 U.S.C. §§ 1110 and 1131, the VA is only authorized to provide compensation

"[f]or disability resulting from personal injury suffered or disease contracted in line of duty." Congress never defines the term "disability" in the statute, and the VA claims its interpretation of "disability" to mean "impairment in earning capacity" under 38 C.F.R. § 4.1 is entitled to Chevron deference.

The veterans counter by pointing out that the VA's regulations explicitly reference "daily life"—38 C.F.R. § 4.10 states that "[t]he basis of disability evaluations is the ability of the body as a whole . . . to function under the ordinary conditions of daily life including employment." They also characterize the Veterans Court holding as merely recognizing that "information about the effect on one's daily life is relevant to assessing its impact on earning capacity . . . . [but] might not be determinative of a rating." In other words, the VA would be required to provide the veteran with "daily life" notice, but would not be required to actually consider "daily life" evidence. See Vazquez-Flores Oral Arg. 26:08–7:05, May 5, 2009, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-7150.mp3.

We are convinced that the government is correct. Section 1155 focuses entirely upon impairment in earnings capacity; it requires the Secretary to "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries." The first sentence of the statute unambiguously makes it clear that earning capacity is the only relevant consideration. The following sentence mentions that ratings must be based "as far as practicable" upon average impairment in earning capacity, but this does not imply that other considerations—such as impact on daily life—are necessarily relevant. Instead, this merely recognizes that the schedule of ratings of reductions in earning capacity are to be based on the average impairment in

earning capacity. See Thun v. Peake, 22 Vet. App. 111, 114 (2008) ("Because the ratings are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability."); Talley v. Derwinski, 2 Vet. App. 282, 288 (1992) ("The regulations properly permit a veteran to qualify for VA pension if his or her disability is sufficiently disabling to be permanently and totally disabling for the average person but, due to extraordinary perseverance or skill, not for that particular veteran . . . ."). Nothing in the statute provides support for the veterans' claim that "daily life" is relevant to the ratings schedule.

This conclusion is reinforced by the VA's interpretation of the term "disability." The VA is authorized to award benefits when a veteran receives a disability in the line of duty. See 38 U.S.C. § 1131 (compensation to be provided for service-connected "disability resulting from personal injury suffered or disease contracted in line of duty . . . during other than a period of war"); 38 U.S.C. § 1121 (same for disabilities incurred during wartime). Under 38 C.F.R. § 4.1, the VA defines "disability" to mean "impairment in earning capacity resulting from such diseases and injuries and their residual conditions." This longstanding interpretation is entitled to deference. See Davis v. Principi, 276 F.3d 1341, 1344 (Fed. Cir. 2002) ("The Secretary has defined 'disability' as 'impairment in earnings capacity resulting from such diseases and injuries and their residual conditions.' 38 C.F.R. § 4.1 (1990). . . . The Secretary's definition of 'disability' comports well with its common usage."); Hunt v. Derwinski, 1 Vet. App. 292, 296–97 (1991) ("Such a definition of 'disability' follows the overall statutory and regulatory purpose of the veterans compensation law. This purpose is reflected in the

ratings system, which rates different mental and physical maladies based upon diminished earning capacity. . . .   Hence, although 'disability' is not defined by the statute for compensation purposes, the regulatory definition adopted is a reasonable one.").

As the veterans point out, the phrase "daily life" is used in Part 4 of 38 C.F.R. See 38 C.F.R. § 4.10.  The cited statement, however, falls within Subpart A, which provides "regulations prescribing the policies and procedures for conducting VA medical examinations."  Martinak v. Nicholson, 21 Vet. App. 447, 451 (2007).  This is a meaningful distinction.  The Veterans Court has established that while "[t]hese regulations, like those establishing the rating schedule, are listed in part 4 of title 38 of the [C.F.R.]," medical examination regulations cannot be considered a part of the rating schedule because "[t]he rating schedule consists only of those regulations that establish disabilities and set forth the terms under which compensation shall be provided.  A regulation prescribing the policies and procedures for conducting a VA medical examination does not serve these purposes."  Id. at 451–52 (citing 38 U.S.C. § 1155). Thus, while the effects of a disability on one's daily life are arguably relevant to a doctor conducting a medical examination, those effects are not relevant to a disability rating made by a ratings specialist.  The VA has never adopted an interpretation to the contrary.

In sum, the question is not whether the VA would be prudent to urge an applicant for an increased rating to provide evidence relating to "the effect that worsening has on the claimant's . . . daily life."  The question is whether the VA's failure to do so

constitutes a breach of its duty to provide adequate notice to such claimants. For the reasons discussed herein, it does not.

CONCLUSION

As in <u>Wilson</u>, the arguments made by the veterans in this case "overlook[] the many statutory and regulatory provisions that do apply to VA's actions after an initial RO decision." 506 F.3d at 1061. These provisions ensure that the veteran will receive "notice as to why his claim was rejected and an opportunity to submit additional relevant evidence. Indeed, the existence of other statutes . . . requiring specific notice at other points during the claim adjudication process strongly suggests that section 5103(a) was not intended to sweep as broadly as appellant contends." <u>Id.</u> We conclude that the notice described in 38 U.S.C. § 5103(a) need not be veteran specific under <u>Wilson</u> and <u>Paralyzed Veterans</u>. Similarly, while a veteran's "daily life" evidence might in some cases lead to evidence of impairment in earning capacity, the statutory scheme does not require such evidence for proper claim adjudication. Thus, insofar as the notice described by the Veterans Court in <u>Vazquez-Flores</u> requires the VA to notify a veteran of alternative diagnostic codes or potential "daily life" evidence, we vacate the judgments.

We remand to the Veterans Court for a determination of whether the notices provided to Vazquez-Flores and Schultz satisfied the VA's duty to notify in light of the foregoing analysis. <u>See</u> <u>Mayfield v. Nicholson</u>, 444 F.3d 1328, 1335 (Fed. Cir. 2006).

COSTS

Each party shall bear its own costs.

<u>VACATED AND REMANDED</u>