Citation Nr: 1522718 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-21 511 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for an acquired psychiatric disability other than PTSD, to include depression.

3. Entitlement to a disability rating greater than 10 percent for scar residual partial avulsion of the extensor tendon to the distal phalanx of the right finger.

4. Entitlement to a temporary total rating for PTSD under 38 C.F.R. § 4.29, based on hospitalization.

5. Entitlement to a total disability rating for individual unemployability (TDIU) due to service-connected disabilities.


REPRESENTATION

Appellant represented by: Michael L. Varon, Attorney at Law



ATTORNEY FOR THE BOARD

S. Gordon, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from March 1971 to July 1973.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in New York, New York.

The Board notes that the Veteran requested on his July 2013 VA Form 9 Appeal that he be afforded a video conference hearing before a member of the Board. In December 2013, the Veteran, through his representative at the time, cancelled his request for a hearing. Although the Veteran subsequently appointed a new representative, he has not requested that his hearing be rescheduled. As such, the Board will proceed to adjudicate the claims. 

This appeal was processed using the Virtual VA (VVA) and Virtual Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.

The Board notes that, in Clemons v. Shinseki, 23 Vet. App. 1 (2009), the Court held that claims for service connection for PTSD also encompass claims for service connection for all psychiatric disabilities afflicting a Veteran based on a review of the medical evidence. The medical evidence indicates that the Veteran has been diagnosed as having depression. Thus, the claims of service connection for PTSD and for an acquired psychiatric disability other than PTSD, to include depression are as stated on the title page of this decision.

The issues of entitlement to service connection for PTSD and for an acquired psychiatric disability other than PTSD, to include depression, entitlement to a temporary total rating for PTSD based on hospitalization, and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


FINDING OF FACT

The Veteran's postoperative right finger scar is painful but not unstable, does not exceed an area of 12 square inches (77 square centimeters), and does not limit motion or function of the right finger.


CONCLUSION OF LAW

The criteria for a disability rating greater than 10 percent for postoperative scar of the right finger are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.118, DC 7804 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

Upon receipt of a substantially complete application, VA must notify the claimant and his representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.159 (2013); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The United States Court of Appeals for Veterans Claims (Court) also has held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).
In a pre-adjudication letter dated in March 2009, the RO notified the Veteran of the evidence needed to substantiate his claim for increased rating for scar residual partial avulsion of the extensor tendon to the distal phalanx of the right finger. This letter also satisfied the second and third elements of the duty to notify by delineating the evidence VA would assist him in obtaining and the evidence it was expected that he would provide. Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002); Charles v. Principi, 16 Vet. App. 370 (2002).

The claimant's Veteran status has been substantiated. He was notified of all other elements of the Dingess notice, including the disability rating and effective date elements of his claim, in the March 2009 letter.

The Court held in Vazquez-Flores v. Peake that 38 U.S.C.A § 5103(a) requires, at a minimum, that the Secretary notify the Veteran that, to substantiate an increased rating claim, the Veteran must provide, or ask the Secretary to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment. Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated sub nom, Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

Additionally, the Veteran must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant diagnostic codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment. Id.

Furthermore, the Court directed that as with proper notice for an initial disability rating and consistent with the statutory and regulatory history, the notice must also provide examples of the types of medical and lay evidence that the Veteran may submit (or ask the Secretary to obtain) that are relevant to establishing entitlement to increased compensation- e.g., competent lay statements describing symptoms, medical and hospitalization records, medical statements, employer statements, job application rejections, and any other evidence showing an increase in the disability or exceptional circumstances relating to the disability. Id.

The March 2009 letter told the Veteran that evidence of worsening could substantiate the increased rating claim. He was notified in the letter that medical or lay evidence could be submitted to substantiate his increased rating claim and was provided with specific examples. The letter also stated that the Veteran could submit letters from individuals who could describe the manner in which his disability had worsened. The letter explained that disability ratings are determined by applying VA's rating schedule under which the RO would assign a rating from 0 to 100 percent, and that it would consider evidence of the nature of the symptoms of the condition, their severity and duration, and their impact upon employment.

With respect to VA's duty to assist, the Veteran's service treatment records (STRs), reports of VA examination, and all available post-service medical records have been associated with the claims file. The Board is unaware of any outstanding evidence or information that has not already been requested. Most recently, in May 2010, the Veteran was afforded a VA examination. McLendon v. Nicholson, 20 Vet. App. 79 (2006). The May 2010 VA examiner considered all of the pertinent evidence of record, including the statements of the Veteran, and the medical information necessary to apply the rating criteria with respect to the claim on appeal. There is no indication or argument that the opinion or rationale is inadequate or somehow faulty. 

The AOJ also made an attempt to assist the Veteran with his claim by affording him an additional VA examination. Prior to his VA examination being scheduled, the Veteran was sent a notification letter at his correct mailing address in February 2013, which detailed the consequences of the failure to report for the scheduled examination. The Veteran was scheduled for a VA examination in March 2013 and he failed to report for the examination. The Veteran did not provide good cause as to why he did not appear. 38 C.F.R. § 3.655 (2014). Consequently, evidence that could have been favorable to the Veteran's claim could not be obtained. The Court has held that VA's duty to assist is not always a one-way street. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). If the Veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining relevant evidence.

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements with regard to the claim decided herein.

Analysis

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Ratings Schedule) found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

If there is disagreement with the initial rating assigned following a grant of service connection, separate ratings can be assigned for separate periods of time, based on the facts found. Fenderson v. West, 12 Vet. App. 119, 126 (1999). Reasonable doubt as to the degree of disability will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. In Hart v. Mansfield, 21 Vet. App. 505 (2007), the Court held that "staged" ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings.

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating an appellant's service-connected disabilities. 38 C.F.R. § 4.14. 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Staged ratings are appropriate for an increased rating claim whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran's postoperative right finger scar currently is rated as 10 percent disabling under DC 7804. 

Under the provisions of 38 C.F.R. § 4.118, scars are rated based on varying manifestations. Scars (including linear scars) and other effects of scars evaluated under DCs 7800, 7801, 7802, and 7804 are rated under DC 7805. Any disabling effects not considered in a rating provided under DCs 7800-7804 should be evaluated under an appropriate diagnostic code.

For one or two scars that are unstable or painful a 10 percent rating is warranted under DC 7804. Three or four scars that are unstable or painful warrant a 20 percent rating. Five or more scars that are unstable or painful warrant a 30 percent rating. Note (1) provides that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2) provides that if one or more scars are both unstable and painful, 10 percent is added to the evaluation based on the total number of unstable or painful scars. Note (3) provides that scars evaluated under DC's 7800, 7801, 7802, or 7805 may also receive an evaluation under this diagnostic code when applicable. 38 C.F.R. § 4.118.

Of record is a May 2010 VA examination report. The Veteran's history of his right finger scar was noted. Physical examination revealed that the scar was 0.5 centimeters in maximum width and 4.0 centimeters in maximum length. The scar was painful and superficial. There were no signs of skin breakdown, inflammation, edema, or keloid formation. There were no other disabling effects. There were no significant effects on the Veteran's occupation or any effects on his usual daily activities. 

Further review of the claims file shows that the Veteran is not currently undergoing treatment for the postoperative residual scar, nor has he contended otherwise. 

The Board finds that the preponderance of the evidence is against granting a disability greater than 10 percent for the Veteran's service-connected right finger scar. In this case, although the Veteran described a painful scar on VA examination in May 2010, such complaint is contemplated by the 10 percent disability rating in effect. That being said, there is no evidence of more than one scar as a residual of the right finger surgery. Thus, combining ratings for separate scars is not for consideration. Here, the Veteran currently is assigned a 10 percent evaluation, the maximum schedular rating for under DC 7804 for a single scar. 

There is no other diagnostic code pertaining to scars which could provide a higher disability rating. There are no clinical findings which indicate that the Veteran's scar is located on the head, face or neck. There is no evidence the scar is deep or causes limited function of the right finger or covers an area of 12 square inches. Thus, diagnostic codes for rating these manifestations are not for application. See 38 C.F.R. §§ 4.118, DCs 7800, 7801. Consideration of the criteria under DC 7802 is also not warranted, as the highest evaluation allowed under this diagnostic criteria is 10 percent evaluation. See 38 C.F.R. § 4.118, DC 7802. Without any medical evidence of greater impairment, the claim must be denied.

The Board also finds that consideration of staged ratings is not appropriate. The Veteran has experienced essentially the same level of disability due to his service-connected right finger scar throughout the appeal period. See Hart, 21 Vet. App. at 505. 

As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364, 1365 (Fed. Cir. 2001) (holding that "the benefit of the doubt rule is inapplicable when the preponderance of the evidence is found to be against the claimant"); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to a disability rating greater than 10 percent for scar of the right finger is denied.


REMAND

Based on review of the claims folder, the Board finds that additional development is necessary prior to adjudication of the Veteran's claims for entitlement to service connection for PTSD and for an acquired psychiatric disability other than PTSD, to include depression, entitlement to a temporary total rating for PTSD based on hospitalization, and entitlement to a TDIU.

The Veteran contends that he currently has PTSD related to stressors he experienced during service. Specifically, the Veteran reported that in and around October 1971, he saw a jet engine fall on a shipmate, causing him to die. See March 2009 VA-Form 21-4138. A May 2009 VA treatment record also shows that the Veteran reported experiencing two traumas while serving aboard an aircraft carrier. He again reported that a friend working under a jet was crushed to death when the engine fell on him and that he heard his final gasp and witnessed the crushed body. He also reported that he witnessed an A-6 aircraft taking off and crash into the sea in front of the ship, which sailed over the aircraft wreckage. A later May 2009 VA group psychotherapy note reflects that the Veteran began to speak about a traumatic event which occurred "on the ship, but he became too dissociated to continue." VA treatment records reflect a diagnosis of PTSD. 

A January 2010 VA Memorandum indicated that the information required to corroborate the stressful events described by the Veteran were insufficient to send to the U.S. Army and Joint Services Records Research Center (JSRRC) and/or insufficient to allow for meaningful research of Marine Corps or National Archives and Records Administration (NARA) records. Subsequently, the Veteran's claim was denied by the RO in a June 2010 rating decision. A June 2013 statement of the case (SOC) further notified the Veteran of the regulations pertaining to the issue of entitlement to service connection for PTSD and explained the reason for the denial of entitlement to service connection for PTSD. In particular, the June 2013 SOC indicated that the Veteran had not "furnished a verifiable stressor which [the AOJ] could relate to his current diagnosis of [PTSD]." As such, his claim for PTSD was denied. 

Since the June 2013 SOC, additional records have been added to the Veteran's claims file. Attached to a September 2014 letter (uploaded on VBMS) by the Veteran's representative, were copies of additional evidence, including an excerpt from the US Navy's "History of the U.S.S. John F. Kennedy (CV-67)," printed from its official website, April 1972 deck logs from the CV-67 obtained from the National Archives, and the complete U.S. Navy accident investigation report of the Veteran's claimed stressor event, obtained from the office of the U.S. Navy Judge Advocate General. The Veteran's representative expressed his desire that the Veteran's claim for PTSD, which had been "denied based upon the inability to confirm the existence of the claimed stressor or event," be readjudicated and that a supplemental statement of the case (SSOC) be issued. To date, a SSOC has not been issued. Given that the Veteran has submitted additional information pertaining to his claimed stressor, further attempts to confirm this stressor should be accomplished. As the Veteran did not waive initial RO consideration of the newly submitted evidence pertinent to his claim, a SSOC also must be issued on remand. 8 C.F.R. § 19.31.

Should any of the Veteran's claimed in-service stressors be confirmed, the Board finds that a VA PTSD examination also is necessary. The Veteran has a current diagnosis of PTSD. He has reported in-service stressors. There is an indication that the stressors and his PTSD are connected. And there is insufficient competent medical evidence to make a decision on the claim. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). If the Veteran's stressor is corroborated on remand, then a VA examination is necessary to determine the nature and etiology of the Veteran's PTSD.

The Board next finds the issue of entitlement to service connection for PTSD is "inextricably intertwined" with the issues of entitlement to a temporary total disability rating for PTSD under 38 C.F.R. § 4.29 and to a TDIU. See Harris v. Derwinski, 1 Vet. App. 180 (1991) (holding that issues are considered "inextricably intertwined" when a determination on one issue could have a significant impact on the outcome of another issue). Accordingly, adjudication of the issues of entitlement a temporary total disability rating for PTSD under 38 C.F.R. § 4.29 and to a TDIU is deferred.

The AOJ also should attempt to obtain the Veteran's updated VA and private treatment records.

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and/or his attorney and ask him to identify all VA and non-VA clinicians who have treated him for PTSD and/or for an acquired psychiatric disability other than PTSD, to include depression, since his service separation. Obtain all VA treatment records which have not been obtained already. Once signed releases are received from the Veteran, obtain all private treatment records which have not been obtained already. A copy of any records obtained, to include a negative reply, should be included in the claims file.

2. Contact the Veteran and/or his attorney and ask them to provide more information concerning the claimed in-service stressors, specifically the death of a shipmate due to being crushed by a jet engine in and around October 1971 and an A-6 aircraft crash into the sea. Development should include providing the Veteran with VA Form 21-0781, Statement in Support of claim for Service Connection for PTSD. Any further development deemed necessary with respect to corroboration of the Veteran's claimed stressors, to include contacting the Joint Services Records Research Center (JSRRC), should be completed.

3. Schedule the Veteran for a VA examination to determine the nature and etiology of his PTSD. The claims file and a copy of this remand must be provided to the examiner for review. All appropriate testing should be conducted. The Veteran should be asked to provide a complete medical history, if possible. The examiner should identify any psychiatric disability, to include PTSD and depression, if diagnosed, currently experienced by the Veteran. 

Based on a review of the claims file and the results of the Veteran's physical examination, and the Veteran's statements regarding the development and treatment of his claimed disorder, the examiner is asked to state whether it is at least as likely as not (i.e., a 50 percent or greater probability) that PTSD, if diagnosed, is related to active service or any incident of service. If PTSD is diagnosed, then the examiner should identify the in-service stressor(s) on which this diagnosis is based or whether it is based on fear of hostile military or terrorist activity. The examiner also should state whether the Veteran's PTSD, if diagnosed, precludes him from obtaining and maintaining substantially gainful employment consistent with his education and past work experience. 

If any other acquired psychiatric disorder other than PTSD, to include depression, is diagnosed, then the examiner should state whether it is at least as likely as not (i.e., a 50 percent or greater probability) that an acquired psychiatric disorder other than PTSD, to include depression, is related to active service or any incident of service. A complete rationale must be provided for any opinions expressed. If any requested opinion(s) cannot be provided without resorting to speculation, then the examiner should explain why this is so.

4. The Veteran should be given adequate notice of the requested examinations which includes advising him of the consequences of his failure to report to the examinations. If he fails to report to the examinations, then this fact should be noted in the claims file and a copy of the scheduling of examination notification or refusal to report notice, whichever is applicable, should be obtained by the RO and associated with the claims file.

5. Review all evidence received since the last prior adjudication and readjudicate the Veteran's claims. If the determination remains unfavorable to the Veteran, then the RO should issue a supplemental statement of the case that contains notice of all relevant actions taken, including a summary of the evidence and applicable law and regulations considered pertinent to the issues. An appropriate period of time should be allowed for response by the Veteran and his attorney. Thereafter, the case should be returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MICHAEL T. OSBORNE
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs