Citation Nr: 1121867 
Decision Date: 06/06/11 Archive Date: 06/20/11

DOCKET NO. 07-04 858 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to an increased disability rating for bilateral pes cavus with callosities, in excess of 10 percent prior to December 14, 2009, and in excess of 30 percent from December 14, 2009. 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

Tabitha G. Macko, Associate Counsel



INTRODUCTION

The Veteran, who is the Appellant or Claimant, had active duty service from June 1942 to November 1945.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2006 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA), which denied an increased rating (evaluation) claim for a disability rating greater than 10 percent for bilateral pes cavus with callosities. The Veteran entered a notice of disagreement with the denial of increased ratings. In a June 2010 rating decision during the appeal, the RO increased the rating for the bilateral pes cavus disability from 10 percent to 30 percent for the period from December 14, 2009, thus creating a staged disability rating of 10 percent prior to December 14, 2009, and 30 percent thereafter. Because the increase in the rating of the Veteran's bilateral pes cavus disability does not represent the maximum rating available for the disability, the Veteran's claim for increase remained in appellate status. See AB v. Brown, 6 Vet. App. 35 (1993). In January 2011, the Board remanded for further development the claim seeking an increased rating for bilateral pes cavus.

The issue of entitlement to service connection for residuals of cold weather injury has been raised by the record (see transcript, DRO hearing, p.3), but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. For the rating period prior to January 29, 2007, the Veteran's bilateral pes cavus disability was manifested by pain while walking, some limitation of dorsiflexion at the ankle, and definite tenderness under metatarsal heads, that did not more nearly approximate moderately severe residuals of a bilateral foot injury.

2. For the rating period from January 29, 2007, the Veteran's bilateral pes cavus disability has been manifested by marked tenderness under the metatarsal heads, with painful calluses on the right foot causing antalgic gait to the right and hammertoes, but not dropped forefoot, all toes hammershaped with a tendency to dorsiflexion, and marked shortening of the plantar fascia. 


CONCLUSIONS OF LAW

1. For the appeal period prior to January 29, 2007, the criteria for a disability rating in excess of 10 percent for a bilateral pes cavus disability have not been met. 
38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2010); 38 C.F.R. § 4.71a, Diagnostic Code 5278 (2010).

2. Resolving reasonable doubt in the Veteran's favor, for the rating period from January 29, 2007, the criteria for a disability rating of 30 percent, but no higher, for bilateral pes cavus, hallux valgus, callosities, and hammertoes 2,3,4 have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2010); 38 C.F.R. § 4.71a, Diagnostic Code 5278 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in part at 
38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim.

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; 
(4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

In a claim for increase, the VCAA notice requirements are the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment. See Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009) (interpreting 38 U.S.C.A. § 5103(a) as requiring generic claim-specific notice and rejecting veteran-specific notice as to effect on daily life and as to the assigned or a cross-referenced Diagnostic Code under which the disability is rated).

The VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004). In this case, the RO provided pre-adjudication VCAA notice by a letter in April 2006. The Veteran was notified of the type of evidence needed to substantiate the claim for increase, namely, evidence that the disability had increased in severity and the effect that worsening has on the Veteran's employment. Additionally, the letter provided notice to the Veteran that VA would obtain VA records and records of other Federal agencies, and that he could submit other records not in the custody of a Federal agency, such as private medical records or with his authorization VA would obtain any such records on his behalf. The notice included the general provisions for the effective date of a claim and the degree of disability assignable. For these reasons, the Board finds that the duty to notify the Veteran has been fulfilled.

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim. The RO has obtained the Veteran's service treatment records, as well as post-service VA treatment records. The Veteran submitted a private physician's evaluation dated September 2006 and did not identify any other private records for the RO to obtain on his behalf.

The Veteran was afforded VA feet examinations in May 2006, October 2007, December 2009, and March 2011 in relation to his claim for increased disability rating for the pes cavus disability. The Board notes that the VA examination report contained sufficiently specific clinical findings and informed discussion of the pertinent history and features of the disability on appeal to provide probative medical evidence adequate for rating purposes. 

The Board remanded this claim for an additional VA feet examination in January 2011. The Board finds the remand instructions have been substantially complied with. A remand by the Board confers upon the appellant, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998). The examination was afforded the Veteran in March 2011. The Board had directed specific questions to be addressed by the examiner and the Board finds within the March 2011 VA examiner's report sufficient answers to proceed with the review of the claim. 

The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide the case and no further action is necessary. See generally 38 C.F.R. § 3.159(c)(4). As there is no indication of the existence of additional evidence to substantiate the claim, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist.


Rating Criteria

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 38 U.S.C.A. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2010).

Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2010). When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b) (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 4.3 (2010).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Historically, the RO granted service connection for moderate, bilateral pes cavus with callosities, with a 20 percent rating, effective August 15, 1946. The rating was reduced to 10 percent disabling, effective July 22, 1947. The Veteran has been consistently rated under Diagnostic Code 5278. The Veteran submitted his current claim seeking a higher rating in March 2006, contending that his bilateral feet disability should have a higher rating because his feet were so painful while he walked. 

Diagnostic Code 5278 provides ratings for acquired claw foot (pes cavus). Acquired claw foot with the great toe dorsiflexed, some limitation of dorsiflexion at the ankle, definite tenderness under metatarsal heads, bilateral or unilateral, is rated 10 percent disabling. Acquired claw foot with all toes tending to dorsiflexion, limitation of dorsiflexion at the ankle to right angle, shortened plantar fascia, and marked tenderness under the metatarsal heads, is rated 20 percent disabling for unilateral involvement, and 30 percent disabling for bilateral involvement. Acquired claw foot with marked contraction of plantar fascia with dropped forefoot, all toes hammer toes, very painful callosities, marked varus deformity, is rated 30 percent disabling for unilateral involvement, and 50 percent disabling for bilateral involvement. 38 C.F.R. § 4.71a.

Diagnostic Code 5284 provides ratings for residuals of other foot injuries. Moderate residuals of foot injuries are rated 10 percent disabling; moderately severe residuals of foot injuries are rated 20 percent disabling; and severe residuals of foot injuries are rated 30 percent disabling. A Note to Diagnostic Code 5284 provides that foot injuries with actual loss of use of the foot are to be rated 40 percent disabling. 38 C.F.R. § 4.71a.

Normal ranges of motion of the ankle are dorsiflexion from 0 degrees to 20 degrees, and plantar flexion from 0 degrees to 45 degrees. 38 C.F.R. § 4.71, Plate II.

Rating of 10 Percent prior to January 29, 2007

The Veteran stated he had not sought treatment for his feet prior to his claim seeking a higher rating. In May 2006 he was afforded a VA feet examination. The examiner noted the Veteran had pain in his feet on walking and standing, which has gotten progressively worse. The Veteran reported no medication, though he did use shoe inserts. Range of motion testing determined the Veteran's dorsiflexion was 10 out of 20 degrees, plantarflexion was 20 out of 45 degrees, the inversion was 10 out of 30 degrees and eversion was 10 out of 20. Yet, the motion was not painful. The examiner also noted no edema, instability, weakness, and no point tenderness. The Veteran's gait was unremarkable. The callosities had no evidence of breakdown. However, the Veteran could not squat or rise on his toes. There was good Achilles alignment. Right hallux valgus was also noted. The Veteran underwent an x-ray study. That x-ray study was read to show osteoarthritis changes in the right foot with small spurs; however, the Board notes that the March 2011 VA examiner specifically noted that he did not find osteoarthritis or any spurs. 

The Veteran initiated VA treatment in June 2006 and during the VA primary care evaluation, the VA clinician noted hammer toes, though only the 2nd and 3rd toes on the right foot, and referred him to podiatry. The August 2006 VA podiatry consultation noted the infection on his toe nails, his hammertoes, that his feet hurt, especially in the arches, and that the recently acquired shoe inserts from podiatry were helping. Objective examination found no ulcerations, infection, warmth, redness, pain, and swelling. Hyperkeratosis lesions were present on the right and left feet, plantar, under the 1st and 5th digits. These lesions were painful. The clinician also found severe pronation and plantar fasciitis. 

The Board finds that the 10 percent rating under DC 5278 remains appropriate for the Veteran's bilateral pes cavus through this rating period until prior to the VA podiatry consultation on January 29, 2007, discussed below. The symptoms and findings indicated above are sufficiently encompassed within the 10 percent rating for bilateral pes cavus, specifically, some limitation of the range of motion for the Veteran's dorsiflexion at the ankle and great toe, as noted during the 2006 VA examination, and definite tenderness with two hammertoes and painful lesions noted during the VA clinical visits, as well as the Veteran's pain while walking. 

The Board further finds that the criteria for a 30 percent rating for bilateral pes cavus have not been sufficiently met for any period on appeal. The evidence does not show all toes tending to dorsiflexion, limitation of dorsiflexion at the ankle at a right angle, shortened plantar fascia, and marked tenderness under the metatarsal heads for any period, nor has the Veteran reported such symptoms for any period. 38 C.F.R. § 4.71a. 

Nor has the Board found any other diagnostic code that would provide the Veteran with a higher than 10 percent rating for this portion of the rating period. In particular, the Board has considered DC 5284, Foot injuries, other, which provides a 20 percent rating for a moderately severe injury. However, the Veteran has not suffered an injury; therefore, that diagnostic code is inapplicable.

On January 29, 2007, the Veteran underwent another VA podiatry consultation. The Veteran reported using both over the counter arch supports and prescriptive orthotics. The VA clinician found calluses, hammertoes, hallux valgus bilaterally, posterior exotosis calcaneous, and subtalar joint range of motion. The Veteran had reported again pain in the ball of the foot, and arch tenderness, but not heel pain. The clinician also found pronation bilaterally, and gait antalgic, with limping to the right because of the callus. The assessment was mechanically unstable feet with severe bilateral pronation. 

The Veteran had also submitted a private evaluation by a Doctor of Osteopathy who noted the Veteran experienced extreme pain while walking and had an extremely thin plantar cushion on his feet, which was unusual for someone of his age. See September 2006, Dr. W. The Board finds that the Veteran experiences pain while walking was never in doubt in the record and that the thin plantar cushion is encompassed within this rating as the tenderness under the Veteran's feet. However, Dr. W's evaluation only noted the thin plantar cushion and included no other observations otherwise relevant for this rating. 

Rating of 30 Percent from January 29, 2007

As of the January 29, 2007, VA podiatry consultation, the criteria for a 30 percent rating for the Veteran's bilateral pes cavus disability have been more nearly approximated; therefore, for the rating period from January 29, 2007, a 30 percent rating is warranted. The January 2007 VA podiatry consultation noted the Veteran was now limping to the right due to the callus pain on the right foot. The Board finds that to be comparable to marked tenderness under the metatarsal heads under the 30 percent rating criteria. Further, considering the pain the Veteran consistently demonstrated while walking, and resolving reasonable doubt in the Veteran's favor, the Board finds that the criteria for a 30 percent evaluation have been more nearly approximated for the period from January 29, 2007. 38 C.F.R. §§ 4.3, 4.7.

The Board finds that the criteria for the higher rating of 50 percent have not been met for any portion of the rating period from January 29, 2007. There are only scattered VA treatment records dated after this January 2007 VA podiatry consultation. That the Veteran experiences pain while walking is well established in the record, and has been considered in granting the 30 percent disability rating. The October 2007 VA feet examination found normal range of motion for the feet and no reduction in range upon repetitive feet rocking. The Veteran experienced pain upon standing or putting weight on his feet and the calluses. The examiner found the calluses on both feet, right more than left, and now under the 1st, 4th, and 5th metatarsal heads, still on the plantar side. Otherwise the skin was normal. Hammertoes were only on the right foot. The alignment of the Achilles tendon was normal. There was hallux valgus on the right to 35 degrees, though on the left to 20 degrees; however, both great toes were able to dorsiflex without pain. 

The Veteran was afforded another VA feet examination in December 2009. That examiner noted in the report the January 2007 VA podiatry consultation and its findings. Again the Veteran reported no pain while his feet were at rest, and reported a pain of 7 out of 10 while prolonged walking and standing. He denied swelling, heat and redness. The Veteran reported that he continued to use a cushioned shoe and shoe inserts, remained retired, and was able to manage the activities of daily living. 

The VA examiner in December 2009 found moderate tenderness over the bilateral arches of the feet and over the calluses of the bilateral feet and mild tenderness over the right bunion area. The examiner also found no heat, redness, or swelling. The gait was described as walking with marked pronation with both feet. Examination findings included two measured calluses under the right 1st and 5th metatarsal bones. Both calluses were moderately tender. There were no other skin breakdowns or ulcerations noted. There was now a 1.5 cm round callus under the left 1st metatarsal bone, which was also moderately tender. This examiner also found hammertoes only on the right foot, of the 2nd, 3rd, and 4th toes. Again the Achilles tendon alignment was normal and nontender. As well, hallux valgus was found on the right foot, with normal dorsiflexion of the 1st metatarsal joint. Now there was mild hallux valgus on the left foot, though with normal dorsiflexion of the 1st metatarsal joint. 

Finally, the Veteran was afforded a VA feet examination in March 2011, post-remand. This examiner found pes cavus and noted no osteoarthritis. Again, the Veteran reported sharp pain while he walked, though the cushioned shoe and inserts were helpful. The Veteran reported being retired from his state's highway department. He and his wife lived on a ranch and took care of themselves and the ranch, and so daily activities were high. This examiner as well found calluses on the right foot, on the 1st, 4th, and 5th metatarsal heads, that were very tender. As found before, there was no edema or pain on range of motion; however, there was tenderness on each plantar callus of the foot. The right foot's bunion was moderate. The examiner noted an increased IM angle with hallux abductus angle and metatarsus adductus on the right foot. The examiner also noted the atrophic fat pad. The Veteran had an antalgic gait to the right foot, and high arches on weight bearing. There were no calluses, or hammertoes, or bunion or hallux valgus on the left foot. The examiner found his range of motion on right to be adequate, but the dorsiflexion on the right was limited to 45 degrees. The great toes had active motion. 

For these reasons, the Board finds the criteria for a higher than 30 percent rating have not been met during the rating period from January 29, 2007. No examiner or clinician found marked contraction of the plantar fascia with dropped forefoot, or that all toes were hammer toes. Indeed, through repeated examinations, only three toes on one foot, the right, were found to be hammer toes. While the Veteran experienced sharp pain on walking with the atrophied fat pad, his calluses remained predominantly only on the right foot; while tender, no examiner or clinician found these calluses very painful. Nor did any examiner or clinician find marked varus deformity. 

As well, the Board finds no basis to alternately consider the criteria of DC 5277 (bilateral weak foot characterized by musculature atrophy, disturbed circulation and weakness), DC 5279 (anterior metatarsalgia or Morton's disease), DC 5280 (unilateral hallux valgus), DC 5282 (hammer toe), or DC 5283 (malunion or nonunion of the tarsal or metatarsal bones).

The Board has also considered DC 5284, which provides a disability rating for other foot injuries; however, a higher disability rating is not possible under DC 5284 for the rating period from January 29, 2007 because the Veteran has already been granted a 30 percent rating for the rating period from January 29, 2007, and the maximum rating under DC 5284 is 30 percent. 38 C.F.R. § 4.71a, Diagnostic Code 5284 (2010). A Note to Diagnostic Code 5284 provides that, with actual loss of use of the foot, a 40 percent rating is assigned. See 38 C.F.R. § 4.71a, Diagnostic Code 5167 (2010). The Veteran has not had the actual loss of either foot. For these reasons, the Board finds that a disability rating in excess of 30 percent for bilateral pes cavus disability (bilateral pes cavus, hallux vulgus, callosities, hammertoes 2, 3, 4,) for the period from January 29, 2007 is not warranted. DC 5278. 38 C.F.R. 
§ 4.71a.

Extraschedular Consideration

The Board has considered whether an extraschedular evaluation would have been warranted for the bilateral pes cavus disability. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2010). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's bilateral pes cavus disability is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. In this case, comparing the Veteran's disability level and symptomatology to the rating schedule, the degree of disability throughout the appeal period under consideration is contemplated by the rating schedule. The Veteran's bilateral pes cavus disability symptoms of pain and tenderness under the metatarsal heads, some limitation of dorsiflexion at the ankle, callosities, and hallux valgus sufficiently corresponds to the schedular criteria for the 10 percent evaluation for bilateral pes cavus (Code 5278) before January 29, 2007, and for 30 percent bilateral pes cavus from January 29, 2007. For this reason, the Board finds that the assigned schedular ratings are adequate to rate the Veteran's bilateral pes cavus disability, and no referral for an extraschedular rating is required. 

Finally, the Court has recently held that a request for a total disability rating based on individual unemployability due to service-connected disabilities, whether expressly raised by a claimant or reasonably raised by the record, is an attempt to obtain an appropriate rating for disability or disabilities, and is part of a claim for increased compensation. There must be cogent evidence of unemployability in the 

record. See Rice v. Shinseki, 22 Vet. App. 447 (2009), citing Comer v. Peake, 
552 F.3d 1362 (Fed. Cir. 2009). In the instant case, the holding of Rice is inapplicable because the evidence of record contains no indication that the Veteran has been rendered unemployable by his service-connected pes cavus disability.


ORDER

An increased disability rating for bilateral pes cavus disability, in excess of 10 percent prior to January 29, 2007, is denied; a higher disability rating of 30 percent, but no higher, from January 29, 2007, is granted.



____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs