Citation Nr: 1126162 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 03-32 175 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to service connection for right ear hearing loss.

2. Entitlement to service connection for bilateral knee disabilities.

3. Entitlement to a rating in excess of 10 percent for plantar fasciitis.


REPRESENTATION

Appellant represented by: National Association of County Veterans Service Officers


WITNESS AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

S. Armstrong, Associate Counsel


INTRODUCTION

The appellant is a veteran who served on active duty from December 1999 to August 2001. These matters are before the Board of Veterans' Appeals (Board) on appeal from an April 2002 rating decision by the Newark, New Jersey RO. In September 2007, a Travel Board hearing was held before the undersigned; a transcript of the hearing is associated with the Veteran's claims file. In January 2008 the case was remanded for additional development. In November 2010 the Veteran requested additional time to submit medical evidence. He was granted a 30 day abeyance period for that purpose. That period of time has lapsed, and no additional evidence was received. 

The matter of service connection for a bilateral knee disability is being REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the Veteran if further action on his part is required. 


FINDINGS OF FACT

1. The preponderance of the evidence is against a finding that the Veteran has a chronic right ear hearing loss disability by VA standards.

2. The Veteran failed to report for a VA examination scheduled in connection with his claim for an increased rating for plantar fasciitis (necessary to properly adjudicate the matter); good cause for his failure to appear is neither shown nor alleged.


CONCLUSIONS OF LAW

1. Service connection for right ear hearing loss is not warranted. 38 U.S.C.A. §§ 1110, 1112, 1113, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2010).

2. The Veteran's claim seeking a rating in excess of 10 percent for plantar fasciitis must be denied because he failed (without good cause) to report for a VA examination scheduled to determine his entitlement to an increased rating. 38 C.F.R. §§ 3.326(a), 3.655 (2010); Sabonis v. Brown, 6 Vet. App. 426 (1994).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

A. Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to these claims. Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim: 1) veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 484-86 (2006), aff'd, 483 F.3d 1311 (Fed. Cir. 2007). VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

In a claim for increase, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

The Veteran was advised of VA's duties to notify and assist in the development of the claims. A February 2006 letter provided certain essential notice prior to the readjudication of his claims. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). This letter explained what was needed to substantiate an increased rating claim, the evidence necessary to substantiate his service connection claims, the evidence VA was responsible for providing, and the evidence he was responsible for providing. A March 2006 letter informed him of disability rating and effective date criteria. An August 2006 supplemental statement of the case (SSOC) readjudicated the matters after the Veteran and his representative were given the opportunity to respond. See Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (noting that a VCAA timing defect may be cured by the issuance of fully compliant notification followed by readjudication of the claim). 

The Veteran was also advised ( by March 2009 letter) of the consequences of a failure to report for his scheduled VA examination.

The Veteran's service treatment records (STRs) are associated with the claims file and pertinent postservice treatment records have been secured. In January 2008, the case was remanded, in part for the Veteran to be afforded VA examinations. The RO arranged for VA audiological evaluations in April 2009, October 2009, and June 2010. The adequacy of those examinations will be discussed below. As will also be discussed in greater detail below, the Veteran failed (without giving cause) to report for an examination scheduled in connection with the claim pertaining to the rating for his feet. The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met. Accordingly, the Board will address the merits of the claims. 

B. Legal Criteria, Factual Background, and Analysis

The Board notes that it has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to these appeals. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate and the analysis will focus specifically on what the evidence shows, or fails to show, as to the claims.

 Right ear hearing loss

Service connection may be established for disability due to disease or injury that was incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection for a claimed disability, there must be medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a).

Service incurrence or aggravation of organic disease of the nervous system (to include SNHL) may be presumed if such is manifested to a compensable degree within a year following a Veteran's discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

Hearing loss disability is defined by regulation. For the purpose of applying the laws administered by VA, impaired hearing is considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

An April 2002 rating decision granted the Veteran service connection for tinnitus and right ear otitis media. A January 2008 Board decision denied service connection for left ear hearing loss. 

On January 2000 service audiometry puretone thresholds, in decibels, were:




HERTZ



500
1000
2000
3000
4000
RIGHT
15
10
0
20
15
LEFT
NA
NA
NA
NA
NA

A May 2000 STR notes that the Veteran had chronic otitis externa. January 2001 service audiometry found that puretone thresholds were:




HERTZ



500
1000
2000
3000
4000
RIGHT
30
25
10
15
15
LEFT
NA
NA
NA
NA
NA

Speech audiometry revealed speech recognition ability of 100 percent in the right ear. 

A July 2, 2001 service audiogram notes that puretone thresholds were:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
30
35
45
45
LEFT
NA
NA
NA
NA
NA

Speech audiometry revealed right ear speech recognition ability of 96 percent.

STRs note that the Veteran was seen on numerous occasions for right ear eustachian tube dysfunction, and a pressure equalization tube was inserted. He was also treated conservatively for chronic otitis. 

On January 2002 VA examination, puretone thresholds were:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
5
5
15
15
LEFT
NA
NA
NA
NA
NA

It was noted that the Veteran had normal hearing by VA standards. Speech audiometry revealed speech recognition ability of 98 percent in the right ear.
On March 2002 VA examination the Veteran reported some subjective hearing loss. He reported that he was a rabbi in service and that he also worked in the engine room and had significant exposure to noise trauma. The examiner noted that the Veteran's audiogram was normal with borderline hearing at 4 KHz. He summarized that according to the Veteran's history and physical examination it was clear that he had normal hearing, but that the Veteran might have high frequency loss at frequencies that were not tested. 

A June 2002 letter from A.A., M.D. notes that the Veteran suffered from tympanosclerosis of the right ear without hearing effect. 

On November 1, 2002 VA examination, puretone thresholds were:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
20
20
25
25
LEFT
NA
NA
NA
NA
NA

The Veteran reported decreased hearing and that as a chaplain he was exposed to noise trauma (from heavy equipment and trucks) during quarterly field operations. The diagnosis was mild high frequency SNHL at 8 KHz in the right ear. Speech audiometry revealed speech recognition ability of 98 percent in the right ear. The examiner noted that the Veteran's hearing loss was inconsistent with a history of noise trauma. She opined that it was not at least as likely as not that a portion of his hearing loss was due to his military career. 

On November 7, 2002 VA examination the Veteran reported that he had difficulty hearing. On clinical examination the Veteran had bilateral moderate SNHL. Puretone results were not reported. The examiner opined that the Veteran's hearing loss was more likely than not related to his service. 

On December 2002 VA audiological evaluation, puretone thresholds were:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
20
20
25
25
LEFT
NA
NA
NA
NA
NA

Speech audiometry revealed right ear speech recognition ability of 98 percent. 

On April 2004 VA examination the Veteran complained of difficulty hearing; moderate bilateral SNHL was noted. There were no puretone threshold studies. 
On November 2004 VA examination, puretone thresholds were:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
15
15
10
10
LEFT
NA
NA
NA
NA
NA

The Veteran reported noise exposure from loud tractors and other heavy equipment in service. Speech audiometry revealed speech recognition ability of 94 percent in the right ear. The examiner noted that the Veteran's hearing thresholds were within normal limits bilaterally. Speech audiometry revealed speech recognition ability of 94 percent in the right ear. 

On May 2006 VA audiological evaluation, puretone thresholds were:




HERTZ



500
1000
2000
3000
4000
RIGHT
35
45
40
35
15
LEFT
NA
NA
NA
NA
NA

The diagnosis was borderline mild to moderate mixed hearing loss through 3 KHz, recovering to within normal limits at 4 and 6 KHz. Speech audiometry (using the NU-6 word list and methodology) revealed speech recognition ability of 94 percent in each ear. It was noted that an ENT consult was recommended to remediate the conductive component of the Veteran's hearing loss. 

A November 2006 VA outpatient treatment record notes that the Veteran had chronic ETD and that he experienced on and off "popping" associated with ear pain. 

A January 2007 VA emergency room record notes that the Veteran arrived with complaints of swelling and pain in the bilateral ears. 

A September 2007 VA outpatient treatment record notes that the Veteran was last examined in May 2006 and that he reported increased difficulty hearing. The provider noted that the reliability of puretone testing was poor even after the Veteran was re-counseled on test instructions. 

At the September 2007 Travel Board hearing the Veteran testified that he first noticed problems with his hearing at Fort Jackson, that he had constant ear infections, and that he sought continuous treatment. 

A November 2007 VA outpatient treatment record notes that the Veteran had flat mild mixed hearing loss bilaterally. 

An April 2007 ENT consultation notes that the Veteran reported that he had experienced hearing loss since service. The provider noted that comparison of November 2004 and May 2006 audiograms revealed a decrease in hearing. The assessment was hearing loss and ETD. 

A December 2007 VA outpatient treatment record notes that the Veteran was issued hearing aids. 

On April 2009 VA examination the examiner noted that the test results were not judged to be reliable and that speech reception thresholds (SRTs) and pure tone averages (PTAs) were not in agreement, with the Veteran offering half word responses. She summarized that no statement regarding the Veteran's hearing sensitivity could be made without reliable, consistent, and valid test results. 

An August 2009 VA outpatient treatment record notes that the Veteran reported right ear pain and that he could not "hardly hear out of my right ear." He was noted to have a sinus infection. 

On October 2009 VA examination the examiner reported that there was poor agreement between SRTs and PTAs bilaterally and that the Veteran was reinstructed many times, while giving half word and labored responses to SRT. His pure tones were considered to be "supra threshold." She summarized that no statement regarding the Veteran's hearing sensitivity could be made without reliable, consistent, and valid test results. 
On June 2010 VA examination the examiner reported that the Veteran gave many half word responses and that his SRT and pure tone PTA were not in agreement, indicating that the results were unreliable. She noted that the Veteran was instructed numerous times and various testing approaches were tried. She summarized that no statement could be made about the Veteran's hearing without reliable and repeatable test results. 

The threshold question that must be addressed here (as in any claim seeking service connection) is whether or not the Veteran has the disability for which service connection is sought (right ear hearing loss disability). In the absence of proof of such disability there is no valid claim for service connection. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

While it appears that a right ear hearing loss disability by VA standards was shown by puretone threshold audiometry on one occasion in service (in July 2, 2001), this was at a time the Veteran had right ear ETD and bouts of otitis (which were treated from January 2001 through at least July 25, 2001), and apparently reflects acute findings that resolved. Clearly; a hearing loss disability did not persist (as a right ear hearing loss disability by VA standards was not found by VA in January, March, November, or December 2002 or in November 2004). Notably, even the Veteran's own provider indicated in a June 2002 letter that the Veteran's right tympanosclerosis had no effect on his hearing.

May 2006 VA audiometry appears to show a right ear hearing loss disability based on puretone results. There was no comment by the audiologist on the correlation between the Veteran's PTA and SRT. In light of the Veteran's documented history of unreliable and inconsistent test results and for reasons further explained below, the May 2006 audiometry is found to be outweighed in probative value by the medical evidence to the contrary. 

The examiners on the three VA examinations subsequent to May 2006 each noted that agreement between PTA and SRT is critical in the accurate determination of the level of organic hearing loss (if any is present). One examiner noted that the Veteran's puretones were "supra threshold." All three VA examiners agreed that reliable, consistent, and valid test results are necessary to provide an accurate picture of any hearing loss that may be present. The Veteran has consistently provided unreliable responses on audiometric testing. The fact that only one audiometric study shows a right hearing loss disability and that four subsequent studies could not duplicate that finding due to unreliable and inconsistent results, leads to the conclusion that the May 2006 audiometry does not represent an accurate picture of the Veteran's hearing acuity. The remaining medical evidence of record discusses hearing loss, but does not include puretone threshold testing or approved speech discrimination testing results. 

In summary, the evidence of record includes four audiometric test results that are unreliable, inconsistent, and do not support a finding of right ear hearing loss disability. On three of these examinations it was noted that the Veteran gave half-word responses (suggesting malingering). One instance specifically noted unusual "supra threshold findings." No examiner offered an explanation for the Veteran's inconsistent results, other than implying that he was not cooperating/following instructions. He was repeatedly counseled and reinstructed. Notably, while VA has a statutory duty to assist a Veteran in developing evidence pertinent to a claim, the Veteran also has a duty to assist and cooperate with the VA in developing evidence; the duty to assist is not a one-way street. See Wood v. Derwinski, 1 Vet. App. 190 (1991).

Significantly, the one audiometric test result that appears to show a right ear hearing loss disability by VA standards does not include an opinion as to etiology of the apparent hearing loss; SRT did not use Maryland CNC methodology (which is mandated in 38 C.F.R. § 3.385); and the results were not certified for rating purposes. 

The other occasions post-service, prior to the May 2006 evaluation (in January, March, November, and December 2002 and in November 2004) are also considered highly probative evidence in the matter as they show that the Veteran did not have a right ear hearing loss disability by VA standards. It appears that on those occasions the Veteran was cooperative with testing instructions and reliable results were obtained, showing right ear hearing within normal limits. 

In light of the foregoing, the Board finds that the preponderance of the evidence is against a finding that the Veteran has a right ear hearing loss disability by VA standards. Hence, the threshold requirement for establishing service connection for such disability is not met. Therefore, the claim must be denied. 

 Plantar fasciitis 

VA has a duty to assist the Veteran in the development of facts pertinent to his claim. See 38 U.S.C.A. § 5107(a); 38 C.F.R. §§ 3.103, 3.159. VA's duty to assist includes obtaining medical records and medical examinations where indicated by the facts and circumstances of the case. Littke v. Derwinski, 1 Vet. App. 90 (1990). Individuals for whom reexaminations have been authorized and scheduled are required to report for such examinations. 38 C.F.R. §§ 3.326(a), 3.327(a). VA regulations also address the consequences of a failure to report for a scheduled VA medical examination and provide that when entitlement or continued entitlement to a benefit cannot be established or confirmed without a current VA examination or reexamination, and a claimant, without good cause, fails to report for such examination in a claim for increase, the claim shall be denied. 38 C.F.R. § 3.655. 

To assist the Veteran with the development of evidence to support his claim for an increased rating for plantar fasciitis, the Board's January 2008 remand requested that the RO schedule him for a VA examination. A March 2009 letter informed him of the consequences of failing to report for an examination without good cause. In a May 2010 letter, the RO informed the Veteran that he would soon be scheduled for a VA examination and that he should contact VA if he would be unable to make the examination. An October 2010 associated electronic record notes that he failed, without giving cause, to report for his VA examination scheduled on September 20, 2010. It is neither shown nor alleged that the Veteran did not receive notice of the examination. There is no indication or allegation in the record of good cause for his failure to appear for the examination. 

The regulation governing in such circumstances, 38 C.F.R. § 3.655, is clear and unequivocal; it mandates that the claim must [shall] be denied. Accordingly, the Board has no discretion in the matter; the law is dispositive. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).


ORDER

Service connection for right ear hearing loss is denied. 

A rating in excess of 10 percent for plantar fasciitis is denied. 


REMAND

Regarding service connection for a bilateral knee disability, while the notice provisions of the VCAA appear to be satisfied the Board finds that further development of the record is necessary to comply with VA's duty to assist the Veteran in the development of facts pertinent to the claim. See 38 C.F.R. § 3.159. 

In the Board's January 2008 remand a VA examination was requested to determine the nature and etiology of the Veteran's bilateral knee disability. On March 2009 VA examination the diagnosis was bilateral knee patellofemoral pain syndrome (PFS); however, the VA examiner did not provide an opinion as to the etiology of the disability. AMC noted this and scheduled the Veteran for an additional VA examination in October 2009. The same examiner noted that the Veteran was seen previously in March 2009, but did not provide an opinion as to the etiology of the diagnosed bilateral PFS. A remand by the Board confers on the appellant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). Notably, VA must provide an examination that is adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007). This matter should not be returned to the Board until the remand instructions are completed in full. 

Accordingly, the case is REMANDED for the following:

1. The RO should return the Veteran's claims folder to the March/October 2009 VA examiner/consultant for a nexus opinion. The examiner should review this remand in conjunction with the request. The examiner must opine whether each knee disability is at least as likely as not related to the Veteran's service, and specifically the knee complaints noted therein. The examiner must explain the rationale for all opinions.

If that examiner is unavailable to provide the opinion sought, the RO should arrange for an another examination of the Veteran for that purpose. 

2. The RO should then re-adjudicate the claim. If it remains denied, the RO should issue an appropriate SSOC and afford the Veteran and his representative the opportunity to respond. The case should then be returned to the Board, if in order, for further review.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner.


______________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs