Citation Nr: 1132113 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 07-02 231 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUES

1. Entitlement to rating higher than 40 percent for L5-S1 disc degeneration with spondylolisthesis and spondylolysis.

2. Entitlement to a compensable rating for radiculopathy of the right lower extremity before April 5, 2010, and a rating higher than 20 percent from April 5, 2010. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

M. Mac, Counsel



INTRODUCTION

The Veteran, who is the appellant, served on active duty from June 1976 to May 1980. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a rating decision, dated in September 2006, of the Department of Veterans Affairs (VA) Regional Office (RO) in Boise, Idaho. 

A rating decision in March 2011 granted a rating of 20 percent for radiculopathy of the right lower extremity, effective April 5, 2010. 

In November 2009, the Board remanded the issues for a VA examination, which the Veteran was afforded in April 2010. The Board also remanded the issue of a total disability rating based on individual unemployability (TDIU) for development under the duty to assist. Subsequently, the rating decision in March 2011 granted TDIU and this issue is not currently in appellate status. As the requested development has been completed, no further action to ensure compliance with the remand directive is required. Stegall v. West, 11 Vet. App. 268 (1998).

FINDINGS OF FACT

1. L5-S1 disc degeneration with spondylolisthesis and spondylolysis is at most manifested by flexion to 10 degrees, extension at 5 degrees, bilateral lateral flexion at 5 degrees and bilateral lateral rotation at 10 degrees; there was no evidence of ankylosis or incapacitating episodes having a total duration of at least 6 weeks during the past 12 months period.

2. Before April 5, 2010, radiculopathy of the right lower extremity has been manifested by mild sensory impairment.

3. From April 5, 2010, radiculopathy of the right lower extremity has been manifested by moderate sensory impairment.



CONCLUSIONS OF LAW

1. The criteria for a rating higher than 40 percent for the service-connected L5-S1 disc degeneration with spondylolisthesis and spondylolysis have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. § 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5242, 5243 (2010).

2. Before April 5, 2010 the criteria for a 10 percent rating for radiculopathy of the right lower extremity have been met; from April 5, 2010 the criteria for a rating higher than 20 percent for radiculopathy of the right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2010).

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. 

Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 








Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

In a claim for increase, the VCAA notice requirements are the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009) (interpreting 38 U.S.C.A. § 5103(a) as requiring generic claim-specific notice and rejecting veteran-specific notice as to effect on daily life and as to the assigned or a cross-referenced Diagnostic Code under which the disability is rated). 

The VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The RO provided pre-adjudication VCAA notice by letter, dated in June 2006. The notice included the type of evidence needed to substantiate a claim for increase, namely, evidence that the disability had increased in severity and the effect that worsening has on employment. 

Additionally, the Veteran was notified that VA would obtain VA records and records of other Federal agencies, and that he could submit other records not in the custody of a Federal agency, such as private medical records. The notice included the provisions for the effective date of a claim and for the degree of disability assignable. 





As for the content and the timing of the VCAA notice, the document complied with the specificity requirements of Quartuccio v. Principi, 16 Vet. App. 183 (2002) (identifying evidence to substantiate a claim and the relative duties of VA and the claimant to obtain evidence); of Charles v. Principi, 16 Vet. App. 370 (2002) (identifying the document that satisfies VCAA notice); of Pelegrini v. Principi, 18 Vet. App. 112 (2004) (pre-adjudication VCAA notice); of Dingess v. Nicholson, 19 Vet. App. 473 (2006) (notice of the elements of the claim); and of Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009) (evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment). 

Duty to Assist

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The RO has obtained VA records and private medical records.

The Veteran was afforded VA examinations in August 2006 and in April 2010. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). While the Veteran in October 2006 and in January 2007 questioned the adequacy of the VA examination in August 2006, noting that the examiner was hostile and did not adequately address range of motion testing, numbness and weakness, the Board finds that the examination is adequate as range of motion, numbness and weakness were addressed and muscle strength was tested. The VA examinations of record are adequate, as the reports provide sufficient detail to rate the service-connected disability. 

As the Veteran has not identified any additional evidence pertinent to the claims and as there are no additional records to obtain, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claims is required to comply with the duty to assist. 



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Rating Principles

A disability rating is determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Rating factors for a disability of the musculoskeletal system include functional loss due to pain supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion, weakness, excess fatigability, incoordination, pain on movement, swelling, or atrophy. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). 


Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, No. 09-2873 (U.S. Vet. App. Aug. 4, 2011)

In evaluating musculoskeletal disabilities, the VA must determine whether pain could significantly limit functional ability during flare-ups, or when the joints are used repeatedly over a period of time. See DeLuca 8 Vet. App. at 206. 

Spine

Disabilities of the spine are rated under either the General Formula for Diseases and Injuries of the Spine (General Formula) or the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher rating.

Under the General Rating Formula (for Diagnostic Codes 5235 to 5243 unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes): a 40 percent evaluation will be assigned for unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation will be assigned for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation will be assigned for unfavorable ankylosis of the entire spine. 

Note (1): Objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are evaluated separately, under an appropriate diagnostic code.






When rated based on incapacitating episodes, a 40 percent rating is warranted when there are incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent rating is warranted when there are incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. An "incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243. 38 C.F.R. § 4.71a, Diagnostic Code 5235-5243.

The normal findings for range of motion of the lumbar spine are flexion to 90 degrees, extension to 30 degrees, lateral flexion, right and left, to 30 degrees, and rotation, right and left, to 30 degrees. 38 C.F.R. § 4.71a, Plate V.

Evidence and Analysis

VA records from June 2005 to March 2011 extensively document back pain and show the Veteran had intervertebral disk displacement. In August 2006, a CT scan of the thoracic spine showed hypertrophic end plate osteophytosis and osteoarthritis of the right costovertebral junctions at the ninth and tenth level. 

On VA examination in August 2006, the examiner indicated that there was no leg or foot weakness and paresthesias. The Veteran complained of severe flare-ups of pain 4 to 7 days per week. He indicated he had constant back pain that was 10/10. Symptoms included mild spasm, moderate stiffness and weakness in the lumbar spine. The Veteran complained of rating pain down the right leg to the right great toe and daily incapacitating episodes. 

Physical examination shows that there were no abnormal spinal curvatures, with the exception of lumbar flattening. The examiner indicated that there was no ankylosis or unfavorable ankylosis of the cervical spine or thoracolumbar spine. There was no spasm, atrophy or guarding. There was some tenderness and weakness. 



Flexion was 0 to 23 degrees with pain at 23 degrees. Extension was 0 to 5 degrees with pain at 5 degrees. Right and left lateral flexion was 0 to 5 degrees with pain at 5 degrees. Right lateral rotation was 0 to 11 degrees with pain at 11 degrees. Left lateral rotation was 0 to 12 degrees with pain at 12 degrees. There was additional limitation of motion on repetitive use due to pain, fatigue, weakness or lack of endurance. 

Detailed motor exam shows there was active movement against full resistance in the lower extremity. There was no muscle atrophy. Sensory examination to include vibration, pain, light touch and position sense was normal in the left lower extremity. Knee jerk and ankle jerk were 2+ and plantar flexion was normal in the left lower extremity. 

X-ray shows L5-S1 disk degeneration, spondylolisthesis, and spondylolysis. The diagnosis was lumbar spinal stenosis. The examiner indicated the low back disability moderately to severely affected the Veteran's daily activities and prevented him from playing sports or pursuing recreational activities. 

On VA examination in April 2010, the symptoms included numbness, paresthesias, leg and foot weakness, falls, unsteadiness, fatigue, decreased motion, stiffness, weakness, spasm and severe daily pain. Severe flare-ups were noted 3 to 7 days per week. Medication and bedrest were alleviating factors. As for incapacitating episodes during the past 12 months, the examiner indicated there were incapacitating episodes due to intervertebral disc syndrome, however he noted that there were none that stood out beyond usual and as with incapacitating episodes of the cervical spine, the Veteran described frequent episodes but no "per se order to bed". The Veteran used crutches and a wheelchair and was unable to walk more than a few yards. 

Physical examination shows that there were no abnormal curvatures with the exception of lumbar flattening. There was no cervical spine ankylosis or thoracolumbar spine ankylosis. There was spasm, guarding, painful motion, tenderness and weakness. There was no atrophy. 

Detailed motor exam shows that there was active movement against full resistance regarding left hip flexion and extension, left knee flexion and extension, left ankle dorsiflexion and plantar flexion, and left great toe extension. Muscle tone was normal and there was no muscle atrophy. 

Sensory examination shows that the left lower extremity had 2/2 vibration, pinprick, light touch and position sense.

Detailed reflex exam shows knee jerk and plantar flexion were normal on the left side. Ankle jerk on the left side was absent. 

Active range of motion was 0 to 10 degrees upon flexion, extension, bilateral lateral flexion and bilateral lateral rotation. The examiner was unable to test additional limitations after three repetitive motions due to the Veteran's obesity and stiffness. 

The examiner indicated that the Veteran had right radicular symptoms affecting great toe dorsiflexion and numbness in the medial foot. Accompanying x-ray shows degenerative changes. The diagnosis was degenerative arthritis of the spine with radiculopathy of the right side and problems with bowel, bladder, and morbid obesity. Problems associated with the diagnosis were pain and locking in the back. The Veteran's daily activities were severely affected by his low back disability. 

As the evidence shows the Veteran does not have ankylosis of the spine a rating higher than 40 percent under the General Rating Formula is not warranted. While the Veteran complained of incapacitating episodes, as the evidence, to include VA examinations in August 2006 and in April 2010 and VA records from June 2005 to March 2011 show no evidence of incapacitating episodes, defined as bed rest prescribed by a physician and treatment by a physician, having a total duration of at least 6 weeks during the past 12 months, a rating higher than 40 percent is not warranted under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 



There is no objective evidence of neurological abnormality of the left lower extremity. On VA examination in August 2006 and in April 2010, sensory exam and motor exam were normal with regards to the left lower extremity. The reflexes were normal on both examinations with the exception of left ankle jerk in April 2010, however there are no subjective complaints or objective findings indicating a neurological abnormality of the left lower extremity. As for bowel and bladder impairment, a rating decision in January 2011 granted separate ratings for urinary and fecal incontinence and the issues are not currently in appellate status. 

For these reasons, the preponderance of the evidence is against the claim for a rating higher than 40 percent for L5-S1 disc degeneration with spondylolisthesis and spondylolysis and the benefit-of-the-doubt rule does not apply. 
38 U.S.C.A. §5107(b).

Radiculopathy of the Right Lower Extremity

Radiculopathy of the right lower extremities is rated under Diagnostic Code 8520 for impairment of the sciatic nerve. Under Diagnostic Code 8520, the criteria for a 10 percent rating are mild incomplete paralysis, the criteria for a 20 percent rating are moderate incomplete paralysis. 38 C.F.R. § 4.124a, Diagnostic Code 8520. 

The term "incomplete paralysis" indicates a degree of lost or impaired function that is substantially less than that which is described in the criteria for an evaluation for complete paralysis given with each nerve, whether the less than total paralysis is due to the varied level of the nerve lesion or to partial nerve regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a. 






Before April 5, 2010

Evidence and Analysis

VA records in June 2005 and July 2006 show shooting pain in the right leg. 

On VA examination in August 2006, the examiner noted the Veteran had chronic right great toe peripheral neuropathy. Sensory, vibratory and proprioception were intact in the right foot and toe. Reflexes were normal. There was some numbness in the right great toe. 

As for the peroneal nerve, motor examination shows that muscle strength in the right lower gastrocnemius muscle was 5. The Veteran complained of pain with touch. Vibratory sensation, proprioception and sensory functions were intact in the right lower extremity. Muscle strength of the soleus muscle was 5. There was no weakness. Vibratory, sensory and proprioception functions were intact. 

The sensory function report of the peroneal nerve of the right lower extremity shows vibration, pain level, light touch and position sense were normal. As for the reflex exam, right knee reflex was 2+, right ankle reflex was 2+ and plantar flexion was normal. The examiner indicated that there was no muscle atrophy, abnormal muscle tone or bulk, tremors, abnormal movements, and there was no joint function affected by a nerve disorder. Gait and balance were normal. The diagnosis was peripheral neuropathy of the great toe unsubstantiated on physical examination. The examiner indicated that overall the Veteran's daily activities were moderately affected and he was unable to play sports and travel was severely limited. 

Detailed motor exam, to include hip extension, knee extension, ankle dorsiflexion, ankle plantar flexion and great toe extension shows there was active movement against full resistance. There was no muscle atrophy.

Sensory examination to include vibration, pain, light touch and position sense was normal in the right lower extremity. Knee jerk, ankle jerk and plantar flexion were normal in the right lower extremity. 

The above evidence shows that the Veteran's subjective complaints are pain and numbness. The objective findings on VA examination in August 2006 show there was no muscle atrophy, abnormal muscle tone or bulk, tremors, abnormal movements, and there was no joint function affected by a nerve disorder. The reflex exam, motor exam and sensory exam were normal. As the Veteran complained of numbness in the right great toe, the neurological abnormality is wholly sensory and the involvement is mild, therefore a 10 percent rating is warranted 

Without evidence of neuritis or neuralgia or organic changes, such as atrophy or loss of reflexes, the radiculopathy of the right lower extremity, to include peripheral neuropathy of the right great toe, is sensory in nature and does not more nearly approximate the criteria of a 20 percent rating for moderate incomplete paralysis of the sciatic nerve under Diagnostic Code 8520.

As the other affected nerves are branches of the sciatic nerve, there are no other potential applicable neurological Diagnostic Codes because of pyramiding, that is, the evaluation of the same manifestation under different diagnoses, which is not permissible. 38 C.F.R. § 4.14. 

For the above reasons, the Veteran meets the criteria for a 10 percent rating before April 5, 2010, under Diagnostic Code 8520 and the preponderance of the evidence is against a rating higher than 10 percent for radiculopathy of the right lower extremity before April 5, 2010, and the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b).

From April 5, 2010

On VA examination in April 2010, symptoms included radiating pain to the right leg and great toe. Detailed motor exam shows that there was active movement against some resistance with right hip flexion (involving the femoral nerve) and extension(involving the inferior gluteal nerve), and right knee flexion (involving the sciatic nerve) and extension (involving the femoral nerve). 


There was active movement against gravity with right ankle dorsiflexion (involving the deep peroneal nerve). Right ankle plantar flexion (involving the tibial nerve) shows active movement against some resistance. Right great toe extension (involving the deep peroneal nerve) shows active movement when gravity was eliminated. Muscle tone was normal and there was no muscle atrophy. 

Sensory examination shows that the right lower extremity had 2/2 in vibration. Pinprick/pain, light touch and position sense of the right lower extremity were 0/2. Detailed reflex exam of the right side shows abdominal area was normal, knee jerk was hypoactive, ankle jerk was absent and plantar flexion was normal. The diagnosis was degenerative arthritis of the spine with radiculopathy of the right side. The Veteran's daily activities were severely affected by his low back disability. 

VA records in January 2010 show the Veteran complained of numbness in his leg. In November 2010 the records indicate radiating pain from the back down to the right toes. In March 2011 complaints of right lower extremity pain continued to be documented and neurological evaluation revealed that strength was 5/5 in the lower extremities, sensation was intact to light touch and pinprick, reflexes were normal and gait was normal. 

Based on the evidence from April 5, 2010, the Veteran's subjective complaints are radiating pain and numbness. The objective findings show that radiculopathy of the right lower extremity is at most manifested by an abnormal sensory exam, hypoactive knee jerk and absent ankle jerk, however the motor exam showed that most active movements were against some resistance. The motor exam did not show any palpable or visible contraction or total paralysis with any movement. Therefore the objective findings does not more nearly approximate the criteria for moderately severe incomplete paralysis of the sciatic nerve for the next higher rating of 40 percent under Diagnostic Code 8520.

As the other affected nerves are branches of the sciatic nerve, there are no other potential applicable neurological Diagnostic Codes because of pyramiding, that is, the evaluation of the same manifestation under different diagnoses, which is not permissible. 38 C.F.R. § 4.14. 

For the above reasons, the preponderance of the evidence is against a rating higher than 20 percent for radiculopathy of the right lower extremity from April 5, 2010, and the benefit-of-the-doubt standard of proof does not apply. 
38 U.S.C.A. § 5107(b)

Extraschedular Consideration 

While the Board does not have authority to grant an extraschedular rating in the first instance, the Board does have the authority to decide whether the claim should be referred to the VA Director of the Compensation and Pension Service for consideration of an extraschedular rating. 38 C.F.R. § 3.321(b)(1). 

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular rating for the service-connected disability is inadequate. There must be a comparison between the level of severity and symptomatology of the service-connected disability with the established criteria. 

If the criteria reasonably describe the Veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Peake, 22 Vet. App. 111 (2008).








Here, the rating criteria reasonably describe the Veteran's disability levels and symptomatology, and provided for a greater evaluation for more severe symptoms. For these reasons, the disability pictures are contemplated by the Rating Schedule, and the assigned schedular ratings are, therefore, adequate. Consequently, referral for extraschedular consideration is not required under 38 C.F.R. § 3.321(b)(1).

ORDER

A rating higher than 40 percent for L5-S1 disc degeneration with spondylolisthesis and spondylolysis is denied.

Before April 5, 2010, a rating of 10 percent for radiculopathy of the right lower extremity is granted, subject to the law and regulations governing the award of a monetary benefit.

From April 5, 2010, a rating higher than 20 percent for radiculopathy of the right lower extremity is denied. 



____________________________________________
George E. Guido Jr.
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs