Citation Nr: 1617314 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 14-05 273 ) DATE
 )
 )

Received from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to service connection for sleep apnea, to include as secondary to posttraumatic stress disorder (PTSD) or gastroesophageal reflux disease (GERD).

2. Entitlement to a rating in excess of 50 percent for PTSD prior to September 8, 2015, and in excess of 70 percent thereafter.

3. Entitlement to a rating in excess of 10 percent for GERD prior to September 12, 2015, and in excess of 30 percent thereafter.

4. Entitlement to a rating in excess of 10 percent for degenerative joint disease of the right knee.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

David A. Brenningmeyer, Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Marine Corps from July 1995 to December 1999, and in the U.S. Army from May 2002 to April 2006. He also had service in the Army National Guard of South Carolina.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2012 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. The RO, in pertinent part, increased the rating for PTSD from 30 to 50 percent, effective July 5, 2011; denied ratings in excess of 10 percent for GERD and degenerative joint disease of the right knee; and declined to reopen a previously denied claim for service connection for sleep apnea. After the decision was entered, the case was transferred to the jurisdiction of the RO in Columbia, South Carolina.

In an August 2012 notice of disagreement (NOD), the Veteran requested a hearing before a Decision Review Officer at the RO. He later withdrew the request in April 2013.

In November 2014, the Veteran testified at a Board video-conference hearing before the undersigned Veterans Law Judge. A transcript of that hearing has been associated with the record.

In July 2015, the Board reopened the claim for service connection for sleep apnea and denied a rating in excess of 10 percent for degenerative joint disease of the right knee. The remaining issues on appeal-including the underlying matter of the Veteran's entitlement to service connection for sleep apnea-were remanded to the agency of original jurisdiction (AOJ) for additional development.

In October 2015, after taking further action, the AOJ increased the rating for PTSD from 50 to 70 percent, effective September 8, 2015, and increased the rating for GERD from 10 to 30 percent, effective September 12, 2015. The prior denials were otherwise confirmed and continued, to include with respect to the merits of the Veteran's claim for service connection for sleep apnea, and the case was returned to the Board.

Later in October 2015, the Veteran submitted an NOD with regard to a September 2015 AOJ decision granting additional compensation benefits for dependents M and D, with payment effective October 1, 2015. The Veteran disagreed with the effective date of the award. Thus far, he has not been furnished a statement of the case (SOC) with respect to that issue. See, e.g., 38 C.F.R. § 19.29 (2015). However, it is clear that the RO is aware of the NOD and is continuing to work on the appeal. Therefore, it will not be remanded at this time.

The Veteran also appealed the Board's July 2015 decision with respect to the evaluation of his right knee to the United States Court of Appeals for Veterans Claims (Court). In February 2016, the parties to the appeal (the Veteran, through an attorney, and a representative from VA General Counsel) filed a Joint Motion for Partial Remand (Motion) of the Board's decision. The Court granted the Motion later that month, thereby vacating the Board's decision as to the right knee claim and returning that matter to the Board.

The Board notes that the record contains statements from the Veteran to the effect that his service-connected right knee disability may have caused or aggravated a disability of his left knee. It is not entirely clear from the record whether he wishes to pursue a claim under that theory. If he does, he should file a formal application with the AOJ so that appropriate action can be taken. See 38 C.F.R. §§ 3.1(p), 3.155, 3.160 (2015).

The Board's present decision is limited to an adjudication of issue #3, as enumerated above, on the title page. For the reasons set forth below, the remaining issues (#1, 2, and 4) are being REMANDED to the AOJ.


FINDINGS OF FACT

1. Prior to November 26, 2014, the Veteran's GERD is shown to have been manifested by infrequent or persistently recurrent episodes of epigastric distress, reflux, regurgitation, mild nausea, and pyrosis; it is not shown to have been manifested by dysphagia, vomiting, material weight loss, hematemesis, melena, anemia, or substernal, arm, or shoulder pain, or other symptom combinations productive of considerable or severe impairment of health.

2. As of November 26, 2014, the Veteran's GERD is shown to be manifested by persistently recurrent episodes of epigastric distress, reflux, regurgitation, nausea, intermittent dysphagia, pyrosis, and right arm pain during flare-ups; it is not shown to be manifested by material weight loss, hematemesis, melena, anemia, or other symptom combinations productive of severe impairment of health.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for GERD prior to November 26, 2014, have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.114, Diagnostic Code 7346 (2015).

2. Resolving reasonable doubt in the Veteran's favor, the criteria for a 30 percent rating for GERD have been met from November 26, 2014; a rating in excess of 30 percent is not warranted. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.114, Diagnostic Code 7346 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Preliminary Considerations

On November 9, 2000, the President signed into law the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014)). The VCAA imposes obligations on VA in terms of its duty to notify and assist claimants.

A. The Duty to Notify

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. See Pelegrini v. Principi, 18 Vet. App. 112, 121 (2004). See also Notice and Assistance Requirements and Technical Correction, 73 Fed. Reg. 23,353 (Apr. 30, 2008) (now codified at 38 C.F.R. § 3.159) (removing the prior requirement that VA ask the claimant to provide any pertinent evidence in his possession). Ordinarily, notice with respect to each of these elements must be provided to the claimant prior to the initial unfavorable decision by the AOJ. Id.

In the present case, the Board finds that VA has satisfied its duty to notify. By way of a letter sent to the Veteran in September 2011, the AOJ informed the Veteran that, in evaluating his disability, it would consider evidence of the nature and symptoms of his condition; the severity and duration of his symptoms; and the impact of his condition and symptoms on employment. He was notified of the general manner in which disability ratings are assigned, and examples of the types of evidence he could submit, or ask VA to obtain, were also provided. See, e.g., Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009) (holding that generic notice in response to a claim for an increased rating is all that is necessary). No corrective action is required.

B. The Duty to Assist

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c), (d) (2015). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination and/or opinion when necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d) (West 2014); 38 C.F.R. § 3.159(c)(4) (2015).

In the present case, the Board finds that the duty to assist has been fulfilled. The Veteran's service treatment records have been obtained, as have records of relevant post-service private and VA medical care. He has also been examined (in October 2011, April 2013, and September 2015). Inasmuch as the reports of the relevant examinations, taken together with other evidence of record, contain descriptions of impairment sufficient for the proper evaluation of his disability, the Board finds the examinations adequate.

In November 2014, the Veteran was provided an opportunity to testify at a hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that a Veterans Law Judge who chairs a hearing has two responsibilities: (1) to fully explain the issues, and (2) to suggest the submission of advantageous evidence that may have been overlooked. See 38 C.F.R. § 3.103(c)(2) (2015).

In the present case, during the November 2014 hearing, the undersigned identified the issues on appeal, including the issue currently being decided; inquired as to the impact of the Veteran's GERD on his employment; and took testimony to the effect that the condition had increased in severity since the time of his most recent VA examination. Based on that testimony, the Board directed further development of the claim via remand to the AOJ in July 2015.

As to that remand, the Board finds that the AOJ has substantially complied with its directives with respect to the claim that is currently being decided. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Stegall v. West, 11 Vet. App. 268 (1998). The Veteran was examined for purposes of obtaining more contemporaneous information with respect to the severity of his condition, and outstanding VA treatment records were also procured. No further development action is required.

II. Analysis

Disability evaluations are determined by the application of a schedule of ratings, which is in turn based on the average impairment of earning capacity caused by a given disability. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). Separate diagnostic codes identify the evaluations to be assigned to the various disabilities.

If there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015).

GERD is evaluated as analogous to hiatal hernia, in accordance with the criteria set forth in 38 C.F.R. § 4.114, Diagnostic Code 7346 (2015). 38 C.F.R. § 4.20 (2015). If the condition is manifested by symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia, or by other symptom combinations productive of severe impairment of health, a 60 percent rating is warranted. If the condition is manifested by persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, and is productive of considerable impairment of health, a 30 percent rating is warranted. A 10 percent rating is warranted where two or more of the symptoms for a 30 percent rating are present and of less severity. Id.

In the present case, the record shows that service connection for GERD was established in October 2006, effective May 1, 2006. The disability was evaluated as 10 percent disabling under Diagnostic Code 7346. The Veteran filed the current claim for increase in July 2011 and, as noted, a 30 percent rating was granted during the pendency of the appeal, effective September 12, 2015. See Introduction, supra.

The evidence reflects that the Veteran was examined in October 2011, in connection with his current claim for increase. It was noted at that time that his GERD was manifested by symptoms of reflux, pyrosis, and infrequent episodes of epigastric distress. Persistently recurrent epigastric distress, nausea, vomiting, regurgitation, dysphagia, substernal arm or shoulder pain, weight loss, hematemesis, melena, anemia, sleep disturbance, and stricture, spasm, or acquired diverticulum of the esophagus were not reported to be present.

The Veteran was examined again in April 2013. It was then noted that his GERD was manifested by symptoms of reflux, regurgitation, mild nausea, pyrosis, and persistently recurrent episodes of epigastric distress. Vomiting, dysphagia, substernal arm or shoulder pain, weight loss, hematemesis, melena, anemia, sleep disturbance, and stricture, spasm, or acquired diverticulum of the esophagus were not reported to be present.
 
During the November 2014 Board hearing, the Veteran testified that he experienced heartburn every day; that he got acid in the back of his throat; that the reflux left a bad taste in his mouth and made his breath stink; and that it was hard to swallow at times. He also testified that he got nauseous, especially when the condition was "really, really, really bad," that he "sort of vomit[ted] into [his] mouth a little bit" at times, and that he experienced pain in his right arm during flare-ups. He stated that he took medication to control the condition, and that he avoided foods having a high acid content, but that the condition did not cause him to miss work.

On VA examination in September 2015, it was noted that the Veteran's GERD was manifested by symptoms of reflux, regurgitation, nausea, pyrosis, persistently recurrent epigastric distress, arm pain, and sleep disturbance as often as four out of seven nights per week. Vomiting, dysphagia, weight loss, hematemesis, melena, anemia, and stricture, spasm, or acquired diverticulum of the esophagus was not reported to be present. 

Following a review of the record and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the assignment of a rating in excess of 10 percent for the Veteran's service-connected GERD prior to November 26, 2014. The available evidence reflects that the Veteran's GERD was manifested during that period by infrequent or persistently recurrent episodes of epigastric distress, reflux, regurgitation, mild nausea, and pyrosis. It is not shown to have been manifested by dysphagia, vomiting, material weight loss, hematemesis, melena, anemia, or substernal, arm, or shoulder pain, or by other symptom combinations productive of considerable or severe impairment of health. As such, there is no basis for the assignment of a schedular rating in excess of 10 percent for that period.

However, the Board is persuaded that the evidence supports the assignment of a 30 percent rating for GERD on and after November 26, 2014. The evidence reflects that, in addition to the prior manifestations, the Veteran testified at the November 2014 Board hearing that his condition had worsened and was then characterized by, among other things, intermittent arm pain and difficulty swallowing (i.e., dysphagia). In the Board's view, that evidence, taken together with the Veteran's subsequent statements to the effect that he had been suffering with associated sleep disturbance as often as four out of seven nights per week, is sufficient to support the assignment of a 30 percent rating from the date of the hearing. The evidence, at a minimum, gives rise to a reasonable doubt on the matter. 38 C.F.R. § 4.3 (2015).

No higher rating is warranted, however. None of the evidence suggests that the Veteran's condition is manifested by symptoms of material weight loss, hematemesis, melena, or anemia. Nor is there any suggestion that his condition results in severe impairment of health. Consequently, there is no basis for the assignment of a schedular rating in excess of 30 percent.

In arriving at this conclusion, the Board has specifically considered whether the Veteran is entitled to additional "staged ratings." See Hart v. Mansfield, 21 Vet. App. 505 (2007). It is the Board's conclusion, however, that the Veteran's GERD was never more than 10 percent disabling prior to November 26, 2014, and that it has never been more than 30 percent disabling since that time. Further "staged ratings" are not warranted.

To accord justice in an exceptional case where the schedular standards are found to be inadequate, the RO is authorized to refer a case to the Under Secretary for Benefits or the Director of the Compensation Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability. 38 C.F.R. § 3.321(b)(1) (2015). The criteria for such an award is a finding that the case presents an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards.

The Board has considered whether the Veteran's claim should be referred for consideration of an extraschedular evaluation, and has concluded that no such referral is warranted. The Veteran's reported symptoms are fully contemplated by the schedular rating criteria, which provide for higher evaluations for greater levels of impairment, to include overall impairment of health due to associated symptoms. There is nothing in the record to suggest that his disability picture is so exceptional or unusual as to render impractical the application of the regular schedular standards. See, e.g., Thun v. Peake, 22 Vet. App. 111 (2008).

The Board also notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the symptoms associated with his service-connected disabilities. However, in this case, even after affording the Veteran the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there is no additional impairment that has not been attributed to a specific, rated disability. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for disability that can be attributed only to the combined effect of multiple conditions.

Finally, the Board notes that if the claimant or the record reasonably raises the question of whether the Veteran is unemployable due to the disability for which a higher rating is sought, then part and parcel to that claim for a higher rating is the matter of whether a total disability rating based on individual unemployability due to service-connected disability (TDIU) as a result of that disability is warranted. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, however, there is no suggestion that the Veteran has been actually or effectively rendered unable to obtain or maintain gainful employment due to his service-connected GERD. To the contrary, the October 2011 and April 2013 VA examiners specifically indicated that the Veteran's condition did not impact on his ability to work, and the record otherwise reflects that he is gainfully employed. See, e.g., VA treatment records dated in September 2015. As such, consideration of a TDIU is not warranted.


ORDER

A rating in excess of 10 percent for GERD prior to November 26, 2014, is denied.

A 30 percent rating, but no more, is granted for GERD from November 26, 2014, subject to the law and regulations governing the award of monetary benefits.


REMAND

The record on appeal, as expanded on remand, contains notations to the effect that the Veteran has been receiving private care for cognitive and/or psychiatric difficulties through Clarendon Health System. Although it appears from the record that at least some of the records associated with that treatment were scanned for attachment to VA's electronic medical records system, the records are not viewable through the Veterans Benefits Management System (VBMS) or Virtual VA. Because the records could contain information that bears on the Veteran's PTSD claim, efforts should be made to procure them for association with his electronic claims files. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2015). See also Bell v. Derwinski, 2 Vet. App. 611 (1992) (holding that VA is charged with constructive notice of medical evidence in its possession).

The expanded record also reflects that the Veteran underwent a sleep study at a private facility (Sleep Works) in 2011, and that he reported in October 2013 that he was receiving private care for anxiety and stress. It is not entirely clear whether the care to which he referred was ongoing treatment through The Christian Counseling Center (the last records of which are dated in March 2013), or another facility. Because the records of this treatment, if procured, could contain information germane to the Veteran's sleep apnea and/or PTSD claims, additional development is required. See, e.g., 38 C.F.R. § 3.159(e)(2) (2015) (if VA becomes aware of the existence of relevant records before deciding a claim, VA will, among other things, request that the claimant provide a release for the records).

The AOJ has obtained VA medical opinions with respect to the likelihood that the Veteran's sleep apnea began during or is otherwise etiologically related to his active service, and whether it was caused, or has been aggravated, by PTSD. However, no opinion has been obtained with respect to the likelihood that sleep apnea has been caused or aggravated by GERD, as raised by the Veteran. See VA Form 21-22, dated in September 2012 (wherein the Veteran maintained that his sleep apnea was "exacerbated" by his service-connected GERD). As such, the record should be returned to the VA examiner who last provided an opinion with respect to sleep apnea (in September 2015) for a supplemental report. See, e.g., Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (once VA has provided a VA examination, it is required to provide an adequate one, regardless of whether it was legally obligated to provide an examination in the first place).

With respect to the Veteran's right knee claim, although not expressly stated, the parties to the appeal before the Court appear to have implicitly agreed that the prior examinations conducted in connection with the Veteran's claim for increased rating for the right knee (in May 2009, October 2011, and April 2013) were inadequate. The parties agreed that the examiners noted the presence of flare-ups of right knee pain, but did not discuss the impact of pain during flare-ups on the Veteran's range of motion, and did not state that it was infeasible to do so. In addition, the report of a June 2015 magnetic resonance imaging (MRI) study of the right knee suggests that the Veteran's impairment may have further progressed since the time of the April 2013 examination. As such, a new examination is required. See, e.g., 38 C.F.R. § 3.327(a) (2015) (re-examinations are generally required if evidence indicates that there has been a material change in a disability or that the current rating may be incorrect).

Records of the Veteran's treatment through the VA Medical Center in Columbia, South Carolina were last procured for association with the record on September 1, 2015. On remand, efforts should be made to obtain records of any relevant VA treatment he may have undergone since that time, in order to ensure that the claims remaining on appeal are adjudicated on the basis of an evidentiary record that is as complete as possible. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2015). See also Bell, supra.

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to provide a release for relevant records of treatment from Clarendon Health System, Sleep Works, and the private therapist from whom he reported receiving treatment for anxiety and stress in October 2013, and to identify, and provide appropriate releases for, any other care providers who may possess new or additional evidence pertinent to the issues remaining on appeal. If he provides the necessary release(s), assist him in obtaining the records identified, following the procedures set forth in 38 C.F.R. § 3.159. Any new or additional (i.e., non-duplicative) evidence received should be associated with the record.

2. If the aforementioned records from Clarendon Health System are not otherwise procured, arrange to obtain copies of any records from that facility that have been scanned for attachment to VA's electronic medical records system. The evidence obtained should be associated with the record.

3. Obtain copies of records pertaining to any relevant treatment the Veteran has received through the VAMC in Columbia, South Carolina, since September 1, 2015, following the procedures set forth in 38 C.F.R. § 3.159. The evidence obtained, if any, should be associated with the record.

4. After the foregoing development has been completed to the extent possible, make arrangements to provide the record on appeal to the VA examiner who previously offered opinions with respect to the etiology of the Veteran's sleep apnea in September 2015, if possible.

The examiner should be asked to review the expanded record and prepare a supplemental report addressing each of the following questions:

a. Is it at least as likely as not (i.e., is it 50 percent or more probable) that the Veteran's current sleep apnea was caused by the Veteran's service-connected GERD?

b. Is it at least as likely as not that the Veteran's current sleep apnea has been aggravated (i.e., permanently worsened by) by the Veteran's service-connected GERD?

If the September 2015 examiner is no longer employed by VA, or is otherwise unable to provide the opinions requested, arrange to obtain the requested information from another qualified examiner. The need for another examination and/or telephonic or video interview of the Veteran is left to the discretion of the examiner(s) selected to offer the requested opinions.

A complete rationale for all opinions expressed should be provided.

5. Also arrange to have the Veteran scheduled for an examination of his right knee to determine its current level of severity. 

6. Readjudicate the claims.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

The remanded matters must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
R. FEINBERG
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs